718 So.2d 441 (1998)
John S. GODFREY
v.
BOSTON OLD COLONY INSURANCE COMPANY, et al.
No. 97-CA-2568.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1998.
Rehearing Denied August 31, 1998.
*442 Patrick M. Files, Jarrell E. Godfrey, Jr., The Godfrey Firm, New Orleans, for Plaintiff/Appellant.
Charles W. Schmidt, III, Robert D. Peyton, Joseph M. Guillot, Christovich & Kearney, New Orleans, for Interstate Fire & Casualty Company and LJN, Inc., d/b/a Waldo's.
Darleen M. Jacobs, New Orleans, for Defendant/Appellee Craig Napoli.
William F. Wessel, Raymond R. Egan, III, Wessel & Associates, New Orleans, Amicus Curiae.
Before ARMSTRONG, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
This appeal raises the issue of whether a bar, its owner, and/or it insurer may, under any circumstances, be held liable for injuries suffered by a 19-year-old patron in an automobile accident, which accident occurred after the patron left the bar in an intoxicated condition, while he was a guest passenger in an automobile driven by another 19-year-old bar patron. The trial court granted a motion for summary judgment in favor of the bar and its owner, finding that the plaintiff's consumption of alcohol was the proximate cause of his injuries. Additionally, the trial court found that the bar owner took no affirmative steps to increase the plaintiff's peril. For the reasons which follow, we reverse the trial court judgment dismissing the patron's claim against the owner/vendor and remand for further proceedings consistent with this decision.

Facts
Plaintiff John Godfrey, along with his friends, Ricky Price and Jack Counce, arrived at Waldo's Bar, defendant, some time between 9:30 p.m. and 11:30 p.m., September 20, 1991. The record indicates that Mr. Godfrey and Mr. Price had been together, drinking alcohol, throughout the day; both Mr. Godfrey and Mr. Price were 19 years old at the time. Several witnesses testified by deposition that Mr. Godfrey and Mr. Price each had at least one drink while at Waldo's.
Around 12:15 a.m. the next morning, September 21, 1991, Mr. Godfrey was escorted out of the bar by a Waldo's employee, purportedly because of his intoxication and because he kicked a make-shift television stand in the bar. Outside of the bar, Mr. Craig Napoli, the owner of Waldo's, approached Mr. Godfrey and the small group that had gathered around him to inquire about the altercation; Mr. Napoli apparently knew Mr. Godfrey as a regular customer.
By deposition, Mr. Napoli testified that he asked Mr. Godfrey to hand over his car keys, but that Mr. Godfrey told Mr. Napoli that he was not driving. Moreover, according to Mr. Napoli's deposition, Mr. Godfrey was surrounded by a "conglomeration of people"; those people assured Mr. Napoli that Mr. Godfrey was not driving. Although he testified that Mr. "Godfrey was drunk," he stated as follows concerning the other people:
I felt relatively sure all these people seemed to be coherent, none appeared to be, you know, in a drunken stupor  you know, where I wouldn't feel safe with him getting home. I mean, all of these people seemed to be relatively sober.
Mr. Napoli then returned to the bar.
Mr. Price had driven Mr. Godfrey and Mr. Counce to Waldo's that evening. After the incident at Waldo's, Mr. Price, Mr. Godfrey, Mr. Counce and another friend, Ben Noveck, returned to Mr. Price's car; Mr. Price was the driver. During the drive home from Waldo's, Mr. Price's vehicle turned over in a curve of Palmetto Street near the Orleans/Jefferson Parish line. Mr. Price was killed in the accident, while Mr. Godfrey *443 suffered injuries rendering him a quadriplegic. Mr. Godfrey was reported to have had a blood alcohol level of .29% at the time; the Orleans Parish Coroner's Office reported that Mr. Price's blood alcohol level was .13%.
Mr. Godfrey filed suit against Waldo's and Mr. Napoli, as well as Waldo's insurer, Interstate Fire & Casualty Insurance Co. (hereinafter referred to collectively as "Waldo's"), asserting Waldo's liability for his injuries based on the service of alcohol to the 19year-old Mr. Godfrey. Mr. Godfrey also claims that Waldo's is liable because Mr. Napoli committed an affirmative act by which he assumed responsibility for Mr. Godfrey's welfare, and because Waldo's increased the peril to Mr. Godfrey by ejecting him from the bar and allowing him to leave with an allegedly intoxicated driver.
Waldo's filed a motion for summary judgment, asserting the immunity provided by LSA-R.S. 9:2800.1. The trial court entered summary judgment, stating as follows:
The court finds that it is the consumption of alcohol, rather than the sale of such beverage, that is the proximate cause of any injury inflicted by the intoxicated person upon himself or another person.
The court further finds that Napoli took no affirmative steps to increase the peril of the plaintiff and, [in] fact, took steps to protect him.
On appeal, Mr. Godfrey assigns two issues for review:[1]
1. Whether the decision granting the Motion for Summary Judgment based on the conclusion that the "dram shop" immunity statute, LSA-R.S. 9:2800.1, applies to the sale of alcoholic beverages to those under the legal age for the purchase thereof is in accord with the laws of Louisiana?
2. Whether the decision granting the Motion for Summary Judgment on the factual finding that the Defendants did not commit any affirmative acts to increase the peril to an intoxicated patron but "took steps to protect him" was in error?

I. Standard for deciding motion for summary judgment

Appellate courts review summary judgment decisions de novo. Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583. The appellate court, like the trial court, should uphold a summary judgment decision only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues of material fact and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Id. (citation omitted).
Louisiana Code of Civil Procedure article 966 was amended in 1996 to state that summary judgments are favored. The article was amended again in 1997 to clarify issues concerning the movant's burden of proof. Subparagraph C(2) of article 966 provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his *444 evidentiary burden of proof at trial, there is no genuine issue of material fact.
LSA-C.C.P. art. 966 C(2).
This Court explicated the 1997 amendment to La. C.C.P. article 966 in Cressionie v. Liberty Mutual Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, stating as follows:
Procedurally, under the 1997 amendments to the summary judgment law, La. C.C.P. art. 966, a court's first task on a motion for summary judgment remains the same  to determine whether the moving party's supporting documents  pleadings, depositions, answers to interrogatories, admissions and affidavits  are sufficient to resolve all material factual issues. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker v. Kroop, 95-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 584.
However, if the court finds, based on the evidence presented by the movant, that no genuine issues of material fact exist, the party opposing the motion for summary judgment is required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). In meeting his burden of proof, the movant is expressly not required "to negate all the essential elements of the adverse party's claim, action or defense," but only "to point out to the court that there is an absence of factual support for one or more elements." Id. Once the movant has met his burden and the burden shifts to the party opposing the motion, the non-moving party is not allowed to rely on the allegations of his pleadings in opposition to a properly-supported motion for summary judgment. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/18/96), 684 So.2d 488.
Id. at 366.
In the instant case, Mr. Godfrey claims that Waldo's failed to prove both elements necessary to support the granting of a summary judgment. Mr. Godfrey claims that Waldo's is not entitled to judgment as a matter of law under LSA-R.S. 9:2800.1 and that a genuine issue of material fact remains concerning whether Waldo's committed an affirmative act which increased the peril caused by the intoxication.

II. "Dram shop" liability

The area of civil law dealing with the liability of sellers of alcoholic beverages for damages caused by persons who become intoxicated as a result of the consumption of those alcoholic beverages is commonly called "dram shop"[2] liability. Although the first dram shop laws in this country were passed in the late 1840's as a result of the Temperance Movement, such laws did not play a major role in the development of modern tort law until the 1970's, when the movement against drinking and driving began. Comment, "Responsible Service of Alcohol: A Way to Reduce Injuries and Protect Against Liability," 19 Golden Gate U.L.Rev. 279, 281 (1989); Daphne D. Sipes, "The Emergency of Civil Liability for Dispensing Alcohol: A Comparative Study," 8 Rev. Litig. 1, 3 (1988).

A. Historical development of "Dram Shop" liability

Prior to the institution of dram shop laws, the common law generally did not recognize a cause of action for damages caused by an intoxicated patron. Casenote, "Lee v. Kiku Restaurant: Allocation of Fault Between an Alcohol Vendor and a Patron  What Could Happen After Providing `One More for the Road,'" 17 Am. J. Trial Advoc. 269, 270 (1993); 19 Golden Gate L.Rev. at 281; 8 Rev. Litig. at 3; 48A C.J. S. § 428. The most common rule provided that a vendor supplying alcohol to an "able-bodied man" could not be held liable in negligence for injuries caused by that man's intoxication. 8 Rev. Litig. at 3; Comment, "Third Party Liability for Drunken Driving: When `One for the *445 Road' Becomes One for the Courts," 29 Vill. L.Rev. 1119, 1121 (1983-84). See also 48A C.J. S. § 428. The most common reason given for the rule was that the drinking of the alcohol was the proximate cause of the damages, and that the vendor's role was too far removed to be considered proximate cause. 19 Golden Gate L.Rev. at 281; 48A C.J.S. § 428.
Some exceptions to the above rule were recognized "when the sale of alcohol was reckless or a flagrant violation of the law." 19 Golden Gate L.Rev. at 280. Some jurisdictions also imposed liability if the vendor's serving of alcohol of a particular customer constituted "willful misconduct." 29 Vill. L.Rev. at 1122. For example, in two of the earliest cases recognizing "Dram Shop" liability, the alcoholic beverage vendor was held liable for the value of a slave who died of exposure after becoming intoxicated. See Skinner v. Hughes, 13 Mo. 440 (1850); Harrison v. Berkley, 32 S.C.L. 525, 1 Strob. 525, 47 Am. Dec. 578 (1847). Vendors were also held liable under the common law for serving persons known to be helplessly intoxicated or otherwise without power to resist drinking. See McCue v. Klein, 60 Tex. 168, 48 Am. Rep. 260 (1883); Dunlap v. Wagner, 85 Ind. 529, 44 Am. Rep. 42 (1882). In another early case decided under common law, an alcoholic beverage vendor was required to pay damages arising from the death of a customer who was an "habitual drunkard," to whom the vendor sold alcohol in violation of a penal statute; the vendor had previously received written notification to stop sales to that customer. Riden v. Gremm, 97 Tenn. 220, 36 S.W. 1097, 13 Pickle 220 (1896).
Initially, dram shop statutes "imposed strict liability, without negligence, upon the seller of intoxicating liquor, when the sale result[ed] in harm to the interest of a third person because of the intoxication of the buyer." W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts § 81, 581 (5th ed. 1984). See also 17 Am. J. Trial Advoc. at 270; 8 Rev. Litig. at 4. The first dram shop law was enacted by Wisconsin in 1849.[3] 8 Rev. Litig. at 3. Many of the initial dram shop statutes were repealed after Prohibition ended in 1933. 17 Am. J. Trial Advoc. at 270; 8 Rev. Litig. at 3. However, during the late 1970's and early 1980's, states began reenacting dram shop statutes in response to public pressure on governing bodies to take actions to deter drunken driving and to compensate victims for damages resulting from drunken driving. 17 Am. J. Trial Advoc. at 270. Another suggested reason for the resurgence of dram shop statutes is the "changing concepts of causation in tort cases." Madeleine E. Kelly, "Liquor Liability and Blame-Shifting Defenses: Do They Mix?," 69 Marq. L.Rev. 217 (1986). Currently, a vast majority of the states in this country have some type of dram shop law.[4]Id.

B. Theories of Liability

Three different theories are currently employed throughout the United States, each of which imposes liability on the seller of alcoholic beverages for damages caused by intoxicated patrons: "(1) extension of broadly worded dram shop acts; (2) violations of alcoholic beverage control statutes; and (3) *446 common law negligence." 19 Wake Forest L.Rev. at 1014.

1. Liability under dram shop statutes

Although most states in the United States have some type of dram shop law, no uniformity exists among the various statutes. 17 Am. J. Trial Advoc. at 272. The statutes range from broad rules to narrow rules. Id. The broad rules grant a cause of action to any person injured by an intoxicated person, but usually prohibit an intoxicated person himself from recovering. Id. The narrow rules limit the liability of alcohol vendors for the acts of intoxicated patrons; common limitations include the establishment of shorter statutes of limitations and the imposition of "caps" on the amount of damages recoverable. Id. Some commentators divide the dram shop laws into those which permit a cause of action against the vendor, and those which prohibit or place restrictions upon a cause of action against a vendor. 8 Rev. of Lit. at 5. Louisiana's statute falls in the second category, referred to by some commentators as "anti-dram shop" acts. Id.

2. Liability under alcoholic beverage control acts

In addition to liability imposed by dram shop statutes, all of the 50 states in the United States have alcoholic beverage control acts regulating the sale of intoxicating beverages, most typically making the sale or giving of alcohol to a minor or to a visibly intoxicated person a criminal misdemeanor. 17 Am. J. Trial Advoc. at 273. Violation of such alcoholic beverage control acts is generally considered negligence, and, in some jurisdictions, is considered negligence per se. Id. See also 29 Vill. L.Rev. at 1135-41; 17 Am. J. Trial Advoc. at 273-276; Comment, "Liability of Commercial Vendors, Employers, and Social Hosts for Torts of the Intoxicated," 19 Wake Forest L.Rev. 1014 (1983). The seminal case on this issue is Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1 (1959), in which the New Jersey Supreme Court became the first state supreme court to recognize a common law cause of action based on the negligent sale of alcohol. When the violation of an alcoholic beverage control act has been proven in such a negligence action, the trier of fact is generally allowed to determine whether the violation of the act was the proximate cause of the plaintiff's injuries. 17 Am. J. Trial Advoc. at 273.

3. Liability under general negligence principles

On the other hand, other states have specifically refused to recognize a common-law cause of action arising from violation of a statute which prohibits the sale of alcoholic beverages to specific persons. 48A C.J.S. § 428. In some of those states, a remedy nevertheless exists in cases which do not fall under the terms of the alcoholic beverage control statutes, or where recovery has not been affirmatively prohibited by statute. Id.,

C. Dram shop liability in Louisiana

A thorough review of Louisiana jurisprudence concerning dram shop liability reveals a reluctance to impose liability on an alcoholic beverage vendor for damages caused by the intoxication of a patron. However, as demonstrated by the following discussion of the relevant jurisprudence, that rule has been called into question by some cases involving specific factual situations, many of which raised public policy questions concerning the wisdom of applying the strict rule to the particular situation. Thus, a review of the jurisprudential development of Louisiana's dram shop law is instructive.

1. Historical development of Louisiana law

Because Louisiana adopted its first dram shop law  technically an "anti-dram shop act" in 1986, our examination of the jurisprudence on the issue will be broken into two parts: (1) Louisiana cases decided prior to the adoption of LSA-R.S. 9:2800, and (2) Louisiana cases decided after the adoption of LSA-R.S. 9:2800.

a. Pre-1986 jurisprudence

Traditionally, Louisiana courts held that the proximate cause of an automobile accident like the one which caused Mr. Godfrey's injuries in the instant case is the "intoxication of the driver." Mercier v. Fidelity & Casualty Co., 10 So.2d 262 (La.App.Orl.1942). *447 Citing that rule, the Mercier court denied a passenger recovery because of his own contributory negligence in riding with a driver that he obviously knew was intoxicated. See also Cormier v. Angelle, 119 So.2d 876 (La. App. 1 Cir.1960) (guest passenger denied recovery against host driver he had seen imbibe six drinks of whiskey within a few hours); Elba v. Thomas, 59 So.2d 732 (La. App.Orl.1952) (wife denied coverage against her husband's insurer based on wife's awareness of husband's intoxication following cocktail party).
The rule denying recovery based on contributory negligence was expanded in McAllister v. Travelers Insurance Co., 121 So.2d 283 (La.App. 3 Cir.1960) to a guest passenger who may have been so intoxicated himself that he was unaware he was riding with an intoxicated driver. Id. Allowing an intoxicated person to recover when other plaintiffs could not "would be tantamount to placing a premium on moral turpitude," the court stated. Id. at 287-88. Moreover, in Robinson v. Fidelity & Casualty Co., 135 So.2d 607 (La. App. 1 Cir.1961), the contributory negligence rule was applied to deny recovery to the father of a minor injured as a result his own misconduct following his purchase of wine from the defendant alcoholic beverage vendor. Id. See also Manuel v. United States Fire Insurance Co., 140 So.2d 702 (La.App. 3 Cir.1962).
The above cases clearly demonstrate the traditional unwillingness of Louisiana courts to impose a responsibility to protect an intoxicated person on anyone other than the person who voluntarily becomes intoxicated. The pre-1965 law governing dram shop liability in Louisiana was stated in Robinson as follows:
The Legislature of Louisiana has not seen fit to subject liquor vendors to civil liability for selling to intoxicated or minor persons alcoholic beverages and deny to the vendor of the liquor the right to plead the contributory negligence of the vendee in consuming the liquor.
During the fifteen years between 1965 and 1980, the Louisiana Supreme Court addressed dram shop liability in a series of three cases, which together established the position of this State's highest court on the liability to be imposed on an alcoholic beverage vendor for damages caused by an intoxicated patron. The following issues were the primary questions considered by the court in the three cases: (1) Whether LSA-R.S. 26:88, which prohibited the sale of alcoholic beverages to a minor or to "any intoxicated person," imposed a civil right of action, and (2) Whether an alcoholic beverage vendor could be liable under general negligence principles, as established by La. C.C. arts. 2315 and 2316.
In Lee v. Peerless Insurance Co., 248 La. 982, 183 So.2d 328 (1966), the court refused to impose liability on a vendor for damages incurred by an intoxicated person injured when he was hit by a moving vehicle after being ejected from a nightclub located adjacent to a busy highway. Id. Quoting 48A C.J.S. § 430, the court held that liability does not exist against an alcoholic beverage vendor "[a]t common law, and apart from statute" because "the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it." 183 So.2d at 330. The court refused to imply the granting of a civil right of action from the adoption of LSA-R.S. 26:88. Moreover, the Lee court failed even to consider whether the vendor should have been held liable under the general negligence standards. See Casenote, "Civil Liability of Tavern Keeper for Injury to Intoxicated Person," XII Loy. L.Rev. 204, 207-08 (1966-67).
However, ten years later, the Louisiana Supreme Court applied both LSA-R.S. 26:88 and general negligence principles to reverse a trial court judgment granting an exception of no cause of action in favor of an alcohol beverage vendor. See Pence v. Ketchum, 326 So.2d 831 (La.1976). In that case, which involved a fact situation remarkably similar to the facts of Lee, the court announced a radical departure from the rule established by Lee, holding that the defendant vendor could be liable for the breach of either of two duties: (1) the statutory duty imposed on retailers to refrain from serving alcoholic beverages to an intoxicated person, and (2) the duty of the vendor as a business invitor "to avoid affirmative acts which increase *448 the peril to the intoxicated person." Id. at 835.
The Pence case was heralded by legal commentators as containing "sound public policy considerations" in light of the fact that "the position of the tavern owner in relation to the events which lead up to the accident makes him both a logical and necessary person to look toward when an innocent third party is suing." Casenote, "Intoxication: No Longer a Bar to Patron's Action Against Tavern Owner," 22 Loy. L.Rev. 867, 873 (1976). The following "qualities" of the vendor are considered to support liability: (1) the vendor is a proximate cause of the accident, (2) the vendor is "more likely to be capable of adequately compensating the victim," and (3) the vendor is "in a position to distribute the loss through a price increase to the general drinking population." Id. On the other hand, the fact that the case allowed a person who voluntarily contributed to his own intoxication to recover was criticized. Id. at 874. See also Casenote, "Bar Owner's Liability to Patron for Injuries Arising from Sale of Intoxicating Liquor," 51 Tu. L.Rev. 394, 402 (1977).
However, the Louisiana Supreme Court's apparent openness to imposing liability on an alcoholic beverage vendor was short-lived. Three years after Pence was decided on a pre-trial motion in 1976, the court retracted its position in Thrasher v. Leggett, 373 So.2d 494 (La.1979), refused to impose liability on a vendor of alcoholic beverages for injuries received by a patron who was escorted from the premises by the defendant's employee, despite the fact the vendor violated a law prohibiting the serving of alcohol to a highly intoxicated person. The Thrasher court, deciding the defendant's liability after a full trial, found that LSA-R.S. 26:88 did not provide a civil cause of action, and returned to a holding that the proximate cause of the plaintiff's injury was the consumption, not the sale, of alcohol. Id. at 496.
The Thrasher court did find, however, as it had found in Pence, that La. C.C. arts. 2315-16 imposed a duty on bar owners to refrain from ejecting a helplessly intoxicated patron into a dangerous environment. Id. at 497. The court held, however, that the proper standard for determining whether a vendor had breached a duty by ejecting an intoxicated patron was "whether his conduct was that generally required of a reasonable man under like circumstances." Id. Under the facts of the case, the Thrasher court held, the "bouncer had a right and a duty to remove plaintiff from the premises with reasonable force under the circumstances." Id. The court then considered whether any affirmative act of the defendant vendor increased the peril to the intoxicated person. Id.
Following Thrasher, Louisiana's law concerning dram shop liability was summarized as follows:
Fundamentally, a bar owner's liability under Thrasher pivots on whether the injury results merely from the intoxicated condition or whether it results from an affirmative act (e.g., ejectment) by the owner which increases the peril to the intoxicated patron.
Casenote, "Thrasher v. Leggett: Judicial Restraint in the Imposition of Liquor Vendor Liability," 40 La. L.Rev. 938, 948 (1980). The effect of the Thrasher decision was a "retreat by the Louisiana Supreme court to a more conservative standpoint regarding liquor vendor liability." Id. at 950. All in all, the case was interpreted as "a tentative constriction in an otherwise expanding area of liability," indicating the court's apparent unwillingness "to perpetuate the bold position taken in Pence in the absence of legislative approval." Id.
The first important development concerning dram shop law as it relates to the alcoholic beverage vendors sold to minors in violation of statutory law was the opinion in Chausse v. Southland Corp., 400 So.2d 1199 (La.App. 1 Cir.), writs denied, 404 So.2d 278, 497, 498 (1981). The trial court denied damages to the minor passengers in the automobile driven by another intoxicated minor, applying the traditional contributory negligence rule. Citing "the legislature's intent to protect against the act of the minor's drinking," the appellate court reversed, finding that the Louisiana Supreme Court's reasoning in Thrasher did not apply to the case. Id. at 1203. Applying La. C.C. art. 2315, the court also held that no dram shop act was necessary *449 for recovery. Id.[5] Thus, following the decision in Chausse, Louisiana law seemed to allow for application of a different rule when a vendor violated statutory law by selling alcoholic beverages to minors.
The United States Fifth Circuit Court of Appeal next spoke on the issue of Louisiana law concerning vendor liability for the torts of an intoxicated person to whom he sold alcoholic beverages in Farrington v. Houston's, Inc., 750 F.2d 492 (5th Cir.1985). The court approved a jury instruction which stated that violation of LSA-R.S. 26:88 was one factor to be considered in determining whether such a vendor was liable. Citing Thrasher, the court summarized Louisiana law on the issue as follows:
[T]he standard for determining whether a bar owner has breached his duty to an intoxicated person is whether his conduct was that generally required of a reasonable man under like circumstances. This is the same standard given to the jury by the instruction in the present case. In Thrasher, this court stated that section 26:88(5) obligated the bar owner to maintain order in his establishment and to protect other patrons from disruptive behavior. By relying on section 26:88(5) in determining that the bar owner was not negligent, the court at least suggested that the criminal statute was an appropriate factor for the jury to consider in this case.
Id. at 494 (some citations omitted.) The court also found the instruction consistent with the rule established by Chausse. Id.
The Louisiana Supreme Court's first case addressing the liability of a party providing alcoholic beverages to a minor who later caused serious injuries was Gresham v. Davenport, 537 So.2d 1144 (La.1989), another case decided under pre-1986 law. Although Gresham is technically a social host case, the court addressed dram shop liability in dicta, stating as follows:
Plaintiffs finally contend that absolute liability should attach to [the minor social host] for her conduct in providing [the minor tortfeasor] with beer. However, this state has never implemented dramshop or civil liability statutes against providers of alcoholic beverages. Instead we have chosen to apply the well accepted duty risk analysis to claims of injuries caused by the effects of alcoholic beverages. We rejected the imposition of absolute liability upon an alcoholic beverage retailer for the consequences of a patron's intoxication. Thrasher v. Leggett, 373 So.2d 494 (La.1979).
Id. at 1148.
Despite the fact that Gresham is technically a social-host case, it is an important case because it is the Louisiana Supreme Court's only statement under the pre-LSA-R.S. 9:2800.1 law concerning liability for selling alcohol to a minor under the law as it existed prior to the adoption of LSA-R.S. 9:2800. The effect of Gresham on the issue raised by the instant case has been summarized as follows: "After Gresham it appears that the trend of judicial restraint in imposing liability for alcohol-related accidents has been extended to situations involving minors." Katherine M. Romeo, "Gresham v. Davenport: Minor Social Host Drinking Liability, Where Does the Duty Lie?", 50 La. L.Rev. 875, 884 (1990).
Based on the above jurisprudence, Louisiana jurisprudential law governing the liability of an alcoholic beverage vendor for damages caused by an intoxicated patron was based on general negligence principles. In applying those principles, the courts typically asked two questions: (1) Whether the vendor acted as a reasonable person under the circumstances of the case, and (2) Whether the vendor committed any affirmative acts to increase the peril to the intoxicated person. Up until the adoption of LSA-R.S. 9:2800.1, no alcoholic beverage vendor had ever been held liable for damages caused by an intoxicated patron following a trial on the merits, regardless of the status of the patron as a major or a minor. *450 b. Post-1986 statutory law and jurisprudence
The first two sections of Louisiana's dram shop act, LSA-R.S. 9:2800.1, have provided as follows since the adoption of the provision by the 1986 Louisiana legislature:
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
(Emphasis added). Although the statute has undergone some changes since its initial adoption, the quoted portions are identical today. This is the statute apparently relied upon by the trial court in finding that the proximate cause of the accident which caused plaintiff's injuries in the instant case was the consumption, not the sale, of alcoholic beverages.
The first court to apply LSA-R.S. 9:2800 to a specific factual situation was the United States Fifth Circuit Court of Appeal, in Mayo v. Hyatt Corp., 898 F.2d 47 (5th Cir. 1990). The Mayo case involved a hotel guest who died when he fell down the stairs after a hotel bar allegedly served him alcoholic beverages. Noting the trial court's observation that "Louisiana law unambiguously placed the responsibility for the consequences of intoxication on the intoxicated person, and expressly disclaims `dramshop' liability," the court held that "the sole duty of a seller of alcoholic beverages is to avoid taking `affirmative acts which increase the peril to an intoxicated person.'" Id. at 48-49, citing Thrasher. The court affirmed the trial court's granting of a motion for summary judgment in favor of the defendant hotel, finding that the "[p]laintiffs have failed to produce any evidence whatsoever of an affirmative act on the part of [the hotel] that increased the peril to [the guest]." Id.
In Edson v. Walker, 573 So.2d 545 (La. App. 1 Cir.), writ denied, 576 So.2d 34 (La. 1991),[6] the Louisiana First Circuit Court of Appeal decided a case against an alcoholic beverage vendor brought by a pedestrian struck by an automobile driven by a minor who was served alcohol in violation LSA-R.S. 14:90 and 14:91.1. In reversing a trial court judgment based on LSA-R.S. 9:2800.1, the court noted that the "statute does not relieve the seller or furnisher of alcohol to minors from liability to minors or third persons injured by minors due to the effects of alcohol." Id. at 546. Moreover, the court held that the statute "evidences legislative intent to retain the jurisprudence with reference to liability for the sale or furnishing of alcohol to minors and injuries resulting therefrom." Id.
Since the immunity established by LSA-R.S. 9:2800.1 did not apply, the court decided the case on the basis of the vendor's duty to "avoid affirmative acts which increase the risk of peril to an intoxicated person." Id. The court concluded as follows:
Based on the pleadings and affidavits we cannot say as a matter of law that a retailer of alcoholic beverages has no duty to refrain from selling or serving alcoholic beverages to persons under the age of eighteen years. The facts and circumstances under which a duty would be imposed in this particular case, the scope of the risk encompassed by the duty and *451 causation are more appropriately determined by trial on the merits, not by summary judgment. Accordingly, the summary judgment is reversed.
Id. at 547.
On the other hand, in a case involving an 18-year-old intoxicated driver, the Louisiana Third Circuit Court of Appeal found in Mills v. Harris, 615 So.2d 533 (La.App. 3 Cir.1993), that LSA-R.S. 9:2800.1 immunized the vendor which sold alcoholic beverages to the 18year-old from liability for the death of a passenger, despite the fact the vendor sold alcohol to the 18-year-old in violation of a parish ordinance. Id. Noting that violation of a statute does not constitute negligence per se, the court applied the same duty/risk analysis used in Thrasher and Gresham, considering only whether the vendor had committed an affirmative act which increased the peril created by the intoxication. Id. Unlike the Edson court, which found the language determinative, the Mills court failed to even mention the language of 9:2800.1(B) which appears to restrict the immunity to vendors selling to "persons over the age for the lawful purchase" of alcoholic beverages.
Despite its holding in Mills, the Louisiana Third Circuit stated as follows in Hopkins v. Sovereign Fire & Casualty Insurance Co., 626 So.2d 880 (La.App. 3 Cir.1993), writs denied, 93-2958, 94-0154 (La.3/11/94), 634 So.2d 402, decided six months after the Mills decision:
A vendor of alcoholic beverages who sells alcoholic beverages to a minor cannot automatically escape liability for acts of the immediate purchaser of those items. Likewise, liability cannot be avoided where the quantity of items so purchased by a minor makes it clear that those items are likely to be consumed by more than just the immediate purchaser.
Id. at 886. Finding genuine issues of material fact concerning the duty to be imposed on the vendor, the scope of the risk encompassed by the duty, and causation, the appellate court reversed a summary judgment in favor of the alcoholic beverage vendor who sold alcohol to a minor who gave some of her purchases to other minors, one of whom caused an automobile accident. Id.
The next case providing some insight into the question faced by the court in the instant case is Kramer v. Continental Casualty Co., 92-1131 (La.App. 3 Cir. 9/2/94), 641 So.2d 557, writs denied, 94-2573, 94-2574, 94-2575, 94-2596 (La.12/19/94), 648 So.2d 399, 402, 403, which involved a hotel's duty to minor guests who they ordered to leave despite knowledge of their intoxication. Although the case does not involve a vendor of alcoholic beverages since the minors apparently brought the alcohol to the hotel with them, the court's reasoning does reveal the attitude of the Louisiana Third Circuit Court of Appeal's ever-increasing concern for intoxicated minors. The court found that, once the hotel employees became aware of the possession and consumption of alcohol by underage minors on its premises, it breached its duties to the minors by failing to confiscate the alcoholic beverages or order the minors to cease in their possession and consumption. Id. at 570. Moreover, the court found that the hotel breached its duties to the minors by ordering them to leave. Id.
The most recent case addressing the issue is Spears v. Bradford, 94-0892 (La.App. 1 Cir. 3/3/95), 652 So.2d 628, which technically involves social host liability for serving alcohol to minors who later were involved in an accident. Significantly, the Spears court found that LSA-R.S. 9:2800.1 "does not relieve the seller or furnisher of alcohol to minors from liability to minors or to third persons injured by minors due to the effects of alcohol." Id. at 632, citing Edson. Moreover, the court held that "under LSA-C.C. arts. 2315 and 2316, the sellers or servers of alcohol also have a duty to avoid performing an affirmative act which increases the peril to an intoxicated person." Id. The court nevertheless affirmed a summary judgment in favor of the adult social host, finding that the plaintiffs had failed to present sufficient evidence to show that the social host had served or provided alcohol to the minors involved in the accident. Id.
The above review of the current jurisprudence indicates that determination of the liability of an alcoholic beverage vendor to intoxicated patrons injured as a result of *452 their own intoxication, or to third parties injured because of the negligence of intoxicated patrons, depends on a two-step analysis. First, the court must determine whether the defendant alcoholic beverage vendor is immunized by the provisions of LSA-R.S. 9:2800.1. Most cases can be decided at this point, since all alcoholic beverage vendors who serve "person[s] over the age for lawful purchase" of alcoholic beverages are immunized. LSA-R.S. 9:2800.1(B).
However, in the rare cases which do not qualify for LSA-R.S. 9:2800.1 immunity because the alcoholic beverage vendor sold to a person under "the age for lawful purchase thereof," the court must move to the second level of inquiry, which involves determination of whether the vendor may be held liable under general negligence principles. In determining liability under general negligence principles, courts generally consider the same two questions considered by courts prior to adoption of LSA-R.S. 9:2800.1(1) Whether the vendor acted as a reasonable person under the circumstances of the case, and (2) Whether the vendor committed any affirmative acts to increase the peril to the intoxicated person.

III. LSA-R.S. 9:2800.1 immunity

The first question this court must decide in the instant case in order to determine whether the trial court properly granted the motion for summary judgment in favor of Waldo's is whether Waldo's is immune from liability under the provisions of LSA-R.S. 9:2800.1. We interpret the first paragraph of the trial court's judgment, stating that "the consumption of alcohol, rather than the sale of such beverage, ... is the proximate cause of any injury inflicted by the intoxicated person upon himself or another person," as a finding that Waldo's is entitled to immunity from liability under the provisions of LSA-R.S. 9:2800.1, since the reasons track the language of subsection (A) of that statute.
Waldo's argues that the quoted language of LSA-R.S. 9:2800.1 forecloses liability in this case. Obviously, Waldo's asserts, if the sale, serving, or furnishing of alcoholic beverages can never be the proximate cause of an injury inflicted by an intoxicated person, an alcoholic beverage vendor can never be held liable for such injuries.
However, as was implicitly recognized by both the Edson decision and the Spears decision, the language in subsection (B) of LSA-R.S. 9:2800.1 substantially modifies the absolute nature of the immunity established by LSA-R.S. 9:2800.1(A), granting the immunity only to those vendors selling or serving alcoholic beverages "to a person over the age for lawful purchase thereof." At the time of the accident in question, LSA-R.S. 26:91.5 made it unlawful for anyone under 21 years of age to purchase or have public possession of alcoholic beverages. See La.R.S. 14:91.5, repealed by Acts 1995, No. 639, § 3; Acts 1996, 1 st Ex.Sess., No. 78, § 3. The record indicates that Waldo's sold alcoholic beverages to both Mr. Godfrey and Mr. Price, both of whom were 19 years old at the time of the accident.
This case involves a unique factual situation arising from the effect of the now-infamous "loophole" in Louisiana law. As stated above, in 1991, when this accident occurred, persons younger than 21 years of age were prohibited from legally purchasing alcoholic beverages. However, LSA-R.S. 26:90(A)(1), at that time, prohibited the selling of alcoholic beverages only to persons under 18 years of age. The "loophole" was closed by Acts 1996, 1st Ex.Sess., No. 78, § 2, which amended LSA-R.S. 26:90(A) to prohibit the sale of alcoholic beverages to any person under 21 years of age. Nevertheless, the question presented by the instant case has lasting implications since the law now prohibits the sale or serving of alcohol beverages to anyone under the age of 21.
Importantly, this case does not involve the sale of alcoholic beverages to minors. The only issue decided by the Edson and Spears cases was that LSA-R.S. 9:2800.1 does not "relieve the seller or furnisher of alcohol to minors from liability," finding that the statute "evidences legislative intent to retain the jurisprudence with reference to liability for the sale or furnishing of alcohol to minors and injuries resulting therefrom." David W. Robertson, "Negligence Liability for Crimes *453 and Intentional Acts Committed by Others," 67 Tu. L.Rev. 135, 155 (1992). However, any person over the age of 18 is considered a major under Louisiana law. So, the pertinent issue to be decided in this case is whether the statute's limitation of immunity to vendors selling alcoholic beverages to "a person over the age for lawful purchase" of alcohol extends only to sales to minors, or includes sales to all persons under the age of 21. That question is res nova in Louisiana.
Invoking the commonly-known policy of protecting minors from their own immaturity, Waldo's suggests that restricting the immunity provided by LSA-R.S. 9:2800.1 to alcoholic beverage vendors who sell to majors between the ages of 18 and 21 would somehow infringe on the right of the majors themselves. We find no merit in this argument for several reasons. First, the Louisiana legislature has seen fit to prohibit even majors between the ages of 18 and 21 from purchasing alcoholic beverages. LSA-R.S. 26:91.5. Moreover, today, the legislature has seen fit to prohibit the sale of alcoholic beverages to majors between the ages of 18 and 21. LSA-R.S. 26:90(A). Second, and perhaps more importantly, both of the above statutes have been upheld by the Louisiana Supreme Court against a constitutional challenge, based on the finding that the laws substantially furthered the appropriate state purpose of improving highway safety. See Manuel v. State, 95-2189 (La.7/2/96), 677 So.2d 116. If prohibiting majors under the age of 21 themselves from purchasing alcoholic beverages is constitutional, certainly limiting the LSA-R.S. 9:2800.1 immunity to vendors who sell to purchasers over that age is constitutional and appropriate.
Waldo's also suggests that it should be immune from liability under the facts of this case because, at the time of the accident in this case, Louisiana law did not prohibit the sale of alcoholic beverages to persons between the ages of 18 and 21. However, that argument ignores the express language of LSA-R.S. 9:2800.1, limiting the immunity to vendors who sell alcoholic beverages to "a person over the lawful age for purchase thereof." Based on that language, as well as the jurisprudence holding that an alcohol beverage vendor is not immunized for selling alcoholic beverages to a minor, we find that the LSA-R.S. 9:2800.1 immunity does not extend to vendors selling alcoholic beverages to a major between the ages of 18 and 21.
Accordingly, Waldo's is not automatically immune from liability under LSA-R.S. 9:2800.1. Thus, we disagree with the trial court's finding that "the consumption of alcohol, rather than the sale of such beverage,... is the proximate cause of any injury inflicted by the intoxicated person upon himself or another person."

IV. General negligence principles

Because the immunity established by LSA-R.S. 9:2800.1 does not immunize Waldo's from liability under the facts of the instant case, we turn now to the second level of inquiry for determining whether an alcoholic beverage vendor may be held liable for damages sustained as a result of a patron's intoxication. The second level involves a determination of whether the vendor violated general negligence principles, applying the traditional duty/risk analysis. In the portion of the Gresham case dealing with the minor social host's negligence in causing the accident, the court described the pertinent duty/ risk analysis as follows:
[Under La. C.C. arts. 2315-16], the elements of a cause of action are fault, causation, and damage. The conduct of which the plaintiff complains must be a cause-infact of the harm. After determining causation, the court must also determine what was the duty imposed on the defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles.
537 So.2d at 1146. As we noted earlier, courts applying a duty/risk analysis to determine the liability of an alcoholic beverage vendor for damages caused by an intoxicated patron traditionally ask the following questions: (1) Whether the vendor acted as a reasonable person under the circumstances of the case, and (2) Whether the *454 vendor committed any affirmative acts to increase the peril to the intoxicated person.
The above questions indicate that the alcoholic beverage vendor's duty includes the following: (1) a duty to act as a reasonable person under the circumstances of the case, and (2) a duty not to commit any affirmative acts which increase the peril caused by the intoxication. However, before considering whether Waldo's breached either of these duties in the instant case, we must consider the question of causation.
Mr. Godfrey claims that the trial court improperly granted the motion for summary judgment in favor of Waldo's. Although his brief is organized differently, his arguments concerning Waldo's liability under general negligence principles can be summarized as follows:
1. Waldo's actions were a cause in fact of his injuries;
2. Waldo's breached its duty to act as a reasonable person under the circumstances by allowing him to ride in an automobile driven by an intoxicated driver;
3. Waldo's breached its duty not to take affirmative acts which increased his peril by assuming control of him, then releasing him from that control without guaranteeing his safety.
4. Waldo's duty to act as a reasonable person under the circumstances and to avoid committing affirmative acts to increase his peril encompassed the risk that he would be injured in an automobile accident.
In an apparent attempt to decide whether Waldo's could be held liable under general negligence principles, the trial court specifically held that "Napoli took no affirmative steps to increase the peril to the plaintiff and, [in] fact, took steps to protect him." We agree, in theory, with the trial court's finding that, under the applicable jurisprudence, the actions taken by Waldo's in relation to Godfrey do not qualify as "affirmative steps to increase the peril." Moreover, we believe that the evidence presented by Mr. Godfrey in his opposition to the motion for summary judgment is insufficient to prove even the first level of the duty/risk analysis  i.e., that Waldo's actions in relationship to Mr. Godfrey were a cause-in-fact of the accident which caused Mr. Godfrey's damages.
Under the current state of the jurisprudence concerning an alcoholic beverage vendor's duty to act as a reasonable person under the circumstances and to avoid affirmative acts which increase the peril to an intoxicated person, Waldo's has met its burden of proving that no genuine issues of material fact remain and that it is entitled to judgment as a matter of law concerning its liability for Mr. Godfrey's damages, based on its relationship with Mr. Godfrey. Nothing in the jurisprudence would allow a Louisiana court to impose liability on Waldo's because it breached any duty in its relationship to Mr. Godfrey. Mr. Napoli's attempt to make sure that Mr. Godfrey was not driving, given his state of intoxication, was, as the trial court stated, an attempt to protect Mr. Godfrey, as opposed to committing affirmative acts to increase his peril. Moreover, the fact that Mr. Napoli then allowed Mr. Godfrey to leave with his friends without determining the identity and intoxication level of the driver is insufficient to qualify an "affirmative act which increased the peril" to Mr. Godfrey. None of the evidence presented by Mr. Godfrey is sufficient to dispute Waldo's evidence on this issue. Accordingly, the trial court judgment is affirmed to the extent that it relieves Waldo's of liability based on its relationship to Mr. Godfrey.
Nevertheless, we reverse the trial court judgment to the extent that it dismisses Mr. Godfrey's suit against Waldo's. The fact that Waldo's carried its burden of proving that it cannot be held liable for Mr. Godfrey's injuries under general negligence principles based on Waldo's dealings with Mr. Godfrey personally does not mean, as the trial court held, that Waldo's is entitled to summary judgment dismissing the suit. In fact, the trial court's findings do not settle the "ultimate issue" for determining Waldo's liability under the facts of the instant case. The real question to be decided is whether Waldo's should be held liable to Mr. Godfrey, not as an intoxicated patron, but as a passenger in a vehicle driven by another allegedlyintoxicated patron of the bar  i.e., Mr. Price.
*455 A close review of the jurisprudence discussed above reveals that the crucial question to be answered is whether the alcoholic beverage vendor was negligent in its dealings with the intoxicated driver, not whether the vendor was negligent in its dealings with the injured third party. Although the cases do refer to "affirmative acts which increased the risk of peril to the intoxicated person," none of the cases consider whether the defendant alcoholic beverage vendor was negligent in its dealings with the injured party, unless the injured party is also the intoxicated patron who caused the damages. When a third party is the plaintiff, the court always considers whether the alcoholic beverage vendor took affirmative acts which increased the risk of peril caused by the intoxication. Mr. Godfrey's intoxication did not cause the accident which resulted in his injuries in the instant case; thus, the question of whether Waldo's committed affirmative acts to increase the risk of peril caused by Mr. Godfrey's intoxication is irrelevant.
The true question to be answered is whether Waldo breached any duties in its relationship to Mr. Price which would support imposition of liability for damages caused by Mr. Price's intoxication. Waldo's motion for summary judgment does not even address whether Waldo's can be held liable under general negligence principles for its dealings with Mr. Price; moreover, that issue has not been decided by the trial court. Perhaps more importantly, the only record evidence addressing this issue is purely ancillary to the evidence concerning Waldo's relationship to Mr. Godfrey. The evidence presented, which focuses on Mr. Godfrey rather than Mr. Price, is insufficient to determine even the initial inquiry in the general negligence analysis  i.e., whether Waldo's actions were a cause-in-fact of Mr. Price's alleged intoxication, and thus the resulting accident.
The only record evidence concerning Mr. Price indicates that Mr. Godfrey and Mr. Price had been drinking together virtually all day. One of the other patrons testified that Mr. Price had at least one drink at Waldo's; others indicated that Mr. Price had numerous drinks at Waldo's. At least one witness asserted that Mr. Price was not intoxicated when he arrived at Waldo's, but was definitely intoxicated when he left. Mr. Napoli's deposition indicates that all the people with Mr. Godfrey, apparently including Mr. Price, "seemed to be relatively sober" when they left. In short, the record presents almost no evidence of Mr. Price's condition, and only little evidence of Waldo's dealings with Mr. Price. Under the circumstances, Waldo's has failed to carry its burden of proving that no genuine issues of material fact remain concerning the "ultimate issue" in this case. Summary judgment is therefore inappropriate.

V. Conclusion

Accordingly, the trial court judgment in favor of Waldo's is affirmed to the extent it held that Waldo's cannot be held liable based on its relationship to Mr. Godfrey. However, the trial court judgment is reversed to the extent it dismisses Godfrey's action against Waldo's. The case is remanded for further proceedings consistent with this decision. Waldo's right to amend its motion to prove that it is entitled to summary judgment based on its relationship to Mr. Price is expressly reserved.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Mr. Godfrey also argues that Judge DiRosa, the trial judge who granted summary judgment in favor of the defendant, was biased in this matter because an attorney for one of the defendants had previously represented Judge DiRosa in a separate matter. Mr. Godfrey filed a Motion to Recuse Judge DiRosa, which was denied by Judge Ganucheau, another Civil District Court judge; Mr. Godfrey argues that Judge DiRosa's bias was strengthened after that motion was filed and denied. However, we pretermit discussion of whether Judge Ganucheau's failure to recuse Judge DiRosa resulted in Judge DiRosa's unfairly granting the motion for summary judgment filed by Waldo's in this case, for two reasons: (1) we review a motion for summary judgment de novo, and (2) Judge DiRosa has retired from the bench and will not hear this case on remand. Moreover, this appeal does not concern Judge Ganucheau's decision outside of its potential influence on the summary judgment ruling at issue. Therefore, we do not express an opinion as to whether Judge DiRosa should have been recused from this case.
[2] The term "dram shop" is derived from the fact that commercial establishments typically sold liquor by the dram, a unit of measurement less than a gallon, in the 1800's, when "Dram Shop" Acts were first introduced in this country. See Comment, "Responsible Service of Alcohol: A Way to Reduce Injuries and Protect Against Liability," 19 Golden Gate U.L.Rev. 279, 281 (1989); Daphne D. Sipes, "The Emergence of Civil Liability for Dispensing Alcohol: A Comparative Study," 8 Rev. Lit. 1, 2 at fn. 2 (1988).
[3] Wisconsin essentially retained the original version of the its dram shop law until it was repealed in 1982. The final version of the Wisconsin Dram Shop Act, just prior to its repeal, provided as follows:

Any person or persons who shall be injured in person, property, or means of support by, or in consequence of, the intoxication of any minor or habitual drunkard shall have a right of action jointly or severally in his, her, or their name against any person or persons who have been notified or requested in writing, by the officers authorized by law to forbid the sale or giving away of intoxicating liquors to such minor or habitual drunkard, or by the husband, wife, parents, relatives, guardian or persons having the care or custody of such minor or habitual drunkard, not to sell or give intoxicating liquors to him, and who, notwithstanding such notice or request, shall knowingly sell or give away intoxicating liquors, thereby causing the intoxication of such minor or drunkard; and the person so selling or giving away such liquors or drinks shall be liable for all damages resulting therefrom.
The original dram shop acts enacted by other states were typically very similar to this act. 8 Rev. of Lit. at 3-4, fn. 10.
[4] By 1988, 36 of the 50 states, including Louisiana, had enacted some type of dram shop law. 8 Rev. of Lit. at 4.
[5] A strong dissent stated the opinion that liability cannot attach to a vendor of alcoholic beverages in the absence of a dram shop act and that, even then, the contributory negligence of the injured parties should bar their recovery.
[6] Although the Edson case was decided after the adoption of LSA-R.S. 9:2800.1, the court declined to apply the statute retroactively. Thus, the case was decided under pre-1986 law. Nevertheless, because the trial court had decided the case on the basis of LSA-R.S. 92800.1, the court made significant comments concerning the application of LSA-R.S. 9:2800.1.