793 So.2d 225 (2001)
Larry MAYHORN, Plaintiff-Appellant,
v.
Dona Mae McKINNEY, Norman Ellis, Union Masonic Board Pha/Temple, The Ohio Casualty Group, Caddo Parish School Board, its Agents and Employees, Alex Triggs and All Known Insurers, Defendants-Appellees.
No. 34,789-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
*226 Hersy Jones, Jr., Shreveport, Counsel for Appellant.
Abrams & LaFargue, L.L.C. by Reginald W. Abrams, Shreveport, Counsel for Appellee, Alex Triggs.
Beard & Sutherland by Fred H. Sutherland, Shreveport, Counsel for Appellee, Caddo Parish School Board.
Barham & Warner, L.L.C. by Richard G. Barham, Shreveport, Counsel for Appellees, Union Masonic Board PHA/Temple and West American Insurance Company.
Before PEATROSS, KOSTELKA & DREW, JJ.
PEATROSS, J.
In this personal injury action, Plaintiff, Larry Mayhorn, appeals the grant of summary judgment in favor of Defendant Alex Triggs. For the reasons stated herein, we affirm.

FACTS
The events which form the basis of the underlying personal injury action occurred on October 11, 1996, at the retirement party for Alex Triggs, who was retiring from the Caddo Parish School Board. The party was held at the Union Masonic Temple building ("Masonic Temple"). One of Mr. Triggs' co-employees, Jim Turner, was a member of the Union Masonic Board and was able to secure the Masonic Temple for the party for a charge of $150. This charge included fees for use of the building and security guards which were selected and hired by Norman Ellis, the Union Masonic Board Business Manager. Alcoholic beverages were served free of charge at the party.
Mr. Mayhorn was not invited to the party by Mr. Triggs, but was asked to attend by Mr. Triggs' niece, Humeka Triggs. Mr. Mayhorn was 35 years old at the time and was, and still is, a paraplegic confined to a wheelchair.[1] Despite this fact, Donnie Mae McKinney[2], then 56 *227 years old, repeatedly asked Mr. Mayhorn to dance. After Mr. Mayhorn had been at the party approximately one hour, and after several requests from Ms. McKinney to dance, Ms. McKinney allegedly grabbed Mr. Mayhorn's shoulder from behind, pulling him out of his wheelchair. Mr. Mayhorn fell to the floor and fractured his hip, which had to be surgically repaired.
Mr. Mayhorn testified in his deposition that he had consumed a little more than one beer during the hour he was at the party. The record contains differing testimony as to Ms. McKinney's condition and the degree of inappropriateness of her behavior. According to Mr. Mayhorn, Ms. McKinney consumed a great deal of alcohol at the party; her speech was slurred and she was staggering. In his deposition, Mr. Mayhorn described her conduct as "bothersome," but not "out of control." On appeal, Mr. Mayhorn argues that her behavior was harassing and open and obvious to everyone in attendance. On the other hand, Mr. Triggs argues that Ms. McKinney's conduct did not appear to be out of control until the incident in which Mr. Mayhorn fell out of his wheelchair. Ms. McKinney testified in her deposition that she and Mr. Mayhorn were just "having fun," and she pulled on the arm of his sweater causing his wheelchair to tip over. According to her, Mr. Mayhorn "grinned" and had several of his friends assist him in getting back into his wheelchair.
Mr. Mayhorn sued Mr. Triggs, Norman Ellis, the Caddo Parish School Board, the Union Masonic Board/Temple and its insurer, West American Insurance Group ("West American")[3], and "all unknown insurers," for the injury to his hip as a result of the fall. Mr. Mayhorn subsequently added Emanuel and Dorothy Triggs as defendants.[4] On March 22, 1999, summary judgment was granted in favor of Caddo Parish School Board dismissing it from the suit. On August 15, 2000, summary judgment was granted in favor of the Union Masonic Board/Temple and West American, dismissing them from the suit. On September 18, 2000, Mr. Triggs' motion for summary judgment was granted.[5] It is from this judgment only that Mr. Mayhorn appeals.[6]

*228 DISCUSSION

Under La. C.C.P. art. 966, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the mover is entitled to judgment as a matter of law. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact.
When a motion for summary judgment is made and supported, as provided by procedural law, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided by procedural law, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Verhalen v. Forum Health Management of Georgia, Inc., 34,090 (La. App.2d Cir.11/3/00), 771 So.2d 238, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 738; Kennedy v. Holder, 33,346 (La. App.2d Cir.5/10/00), 760 So.2d 587; Fuggins v. Burger King, 33,473 (La.App.2d Cir.5/10/00), 760 So.2d 605.
The area of civil law dealing with liability for damages caused by intoxicated persons as a result of the consumption of alcoholic beverages is commonly called "dram shop" liability. Applied in the context of vendors who are not business establishments, such liability is referred to as "social host liability." Louisiana enacted La. R.S. 9:2800.1, its first "anti-dram shop" (or anti-social host liability), statute in 1986.[7] La. R.S. 9:2800.1 provides as follows:
2800.1. Limitation of liability for loss connected with sale, serving, or furnishing of alcoholic beverages.
A. The legislature finds and declares that the consumption of intoxicating *229 beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
C. (1) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage of either high or low alcoholic content to a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished.
(2) No social host who owns, leases, or otherwise lawfully occupies premises on which, in his absence and without his consent, intoxicating beverages of either high or low alcoholic content are consumed by a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person who consumed the intoxicating beverages.
D. The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons.
E. The limitation of liability provided by this Section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.
The determination of whether a vendor/host is liable to an intoxicated patron injured as a result of their own intoxication or to third parties injured because of the negligence of an intoxicated patron involves a two-part analysis: (1) whether the vendor/host is immunized by La. R.S. 9:2800.1 and, if not (2) whether the vendor/host can be liable under general negligence principles. Godfrey v. Boston Old Colony Insurance Company, 97-2568 (La. App. 4th Cir.5/27/98), 718 So.2d 441, writ denied, 98-2487 (La.11/20/98), 729 So.2d 563. It is, therefore, only after a determination is made that the above statute (and the immunity it affords) is inapplicable to a given case that the duty/risk analysis of a general negligence issue becomes relevant.
La. R.S. 9:2800.1 is referred to as "anti-dram shop" legislation because it provides absolute immunity to social hosts who serve alcoholic beverages "to a person over the age for lawful purchase thereof." La. R.S. 9:2800.1(C)(1). The record in the case sub judice clearly reveals that Mr. Triggs provided alcoholic beverages as a social host at his retirement party. In addition, Mr. Mayhorn *230 was 35 years old at the time of the incident and Ms. McKinney was 56 years old-both over the age for lawful purchase of alcoholic beverages.
Significantly, Mr. Mayhorn has not produced any evidence creating any issue of fact as to whether or not 9:2800.1 applies in this case. In fact, Mr. Mayhorn did not address the applicability of 9:2800.1 in his brief to this court, but rather focused on the second part of the analysis announced in Godfrey, supra, which involves liability under the general negligence principles of La. C.C. arts. 2315 and 2316.[8] Responding to questioning regarding the applicability of 9:2800.1 during oral argument, Mr. Mayhorn's counsel argued that Ms. McKinney was not intoxicated enough to bring this case within the purview of 9:2800.1, but that she had consumed enough alcohol to cause her to exhibit behavior sufficiently "rowdy" and harassing to warrant imputing knowledge of her behavior to Mr. Triggs and placing an attendant duty on him to protect against the damages resulting from this behavior. We find this argument unpersuasive and totally without merit. La. R.S. 9:2800.1 does apply to the case sub judice and operates to immunize Mr. Triggs from any liability resulting from Ms. McKinney's conduct. We conclude, therefore, that the trial court was correct in granting Mr. Triggs' motion for summary judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Alex Triggs, and thereby dismissing him from the suit, is affirmed. Costs are assessed to Plaintiff/Appellant, Larry Mayhorn.
AFFIRMED.
NOTES
[1] Mr. Mayhorn is paralyzed from the knees down as a result of a gunshot wound.
[2] Apparently this case was incorrectly styled as "Larry Mayhorn v. Dona Mae McKinney...." Review of the record indicates that Ms. McKinney's first name is spelled Donnie, not Dona.
[3] West American Insurance Group was incorrectly named in the original petition as the Ohio Casualty Group.
[4] These latter two defendants were added via supplemental petition. No answer was filed on their behalf.
[5] No motion for summary judgment was filed on behalf of Defendant Donnie Mae McKinney and there is no indication in the record that she has been dismissed. As such, she remains a defendant in the trial court. Regarding Defendant Norman Ellis, we note that an answer was filed on behalf of him together with the Masonic Temple and its insurer; however, he was not named in that motion for summary judgment. The granting of the Masonic Temple's and Ohio Casualty's motion for summary judgment dismissed those entities from the suit, but had no effect on Mr. Ellis' status as a defendant. No other motion for summary judgment was filed on his behalf and nothing in the record before us indicates that he has been otherwise dismissed from the suit.
[6] We recognize that the judgment which Mr. Mayhorn appeals is a partial summary judgment which was not certified as final by the trial court. As such, there may exist an issue as to whether or not the present judgment is properly before this court on appeal. The issue arises because this case was filed prior to January 1, 2000, the effective date of an amendment to La. C.C. art. 1915 which made partial summary judgments dismissing a party final judgments, which are immediately appealable. We believe that it is in the interest of judicial economy, however, that we review the merits of this appeal. Support for our decision to review the merits of this appeal is found in In re Succession of Grimmett, 31,975 (La.App.2d Cir.3/5/99), 738 So.2d 27, wherein this court, sitting en banc, recognized that the court's plenary supervisory powers may be exercised in the court's discretion to review the merits of an appeal of a noncertified partial summary judgment in the proper case. (In re Succession of Grimmett was a prearticle 1915 amendment decision and, therefore, does apply to the instant case.) We believe the case sub judice is a proper case to exercise the court's supervisory power because, in light of the above-described amendment to article 1915, a remand of this case for certification would be a waste of judicial resources. In addition, we note that, during oral argument, counsel for Mr. Mayhorn agreed that the judgment in favor of Mr. Triggs is the only judgment appealed by Mr. Mayhorn.
[7] For a very thorough discussion of the development of the civil law of dram shop liability, generally, and Louisiana dram shop jurisprudence both pre- and postenactment of La. R.S. 9:2800.1, see Godfrey v. Boston Old Colony Insurance Company, 97-2568 (La.App. 4th Cir.5/27/98), 718 So.2d 441, writ denied, 98-2487 (La.11/20/98), 729 So.2d 563.
[8] La. C.C. art. 2315, Liability for acts causing damages, provides, in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
La. C.C. art. 2316, Negligence, imprudence or want of skill, states:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Mr. Mayhorn argues that summary judgment was improper because genuine issues of material fact exist as to whether Mr. Triggs, as lessee of the premises, had or should have had knowledge of Ms. McKinney's intended injurious conduct that was about to occur and as to whether or not Mr. Triggs had a duty to protect against such conduct. Since we find that 9:2800.1 provided Mr. Triggs with absolute immunity from liability for Ms. McKinney's actions, however, we do not reach the question of whether Mr. Triggs may have breached some duty owed to Mr. Mayhorn under any other theory, including general negligence principles.