859 So.2d 656 (2003)
Lois LAZARD, et al.
v.
Sheriff Charles FOTI, et al.
No. 2002-CC-2888.
Supreme Court of Louisiana.
October 21, 2003.
Rehearing Denied December 12, 2003.
*658 L. Joseph Hassinger, Jr., Timothy R. Richardson, Usry, Weeks & Matthews, New Orleans, Counsel for Applicant.
Patrick H. Hufft, Hufft & Hufft, Kendall P. Green, New Orleans, Counsel for Respondent.
TRAYLOR, J.
This matter arises out of a wrongful death action filed by the parents of a sixteen year old juvenile, who was improperly incarcerated in the Orleans Parish Correctional Center for adults instead of the Orleans Juvenile Facility. He was released from the center after fourteen days but not into his parents' custody, and killed by the criminal act of a third party almost twelve hours later. Suit was filed against Sheriff Foti, as criminal sheriff of the Parish of Orleans, the City of New Orleans, and XYZ Insurance Company, alleging that Sheriff Foti was negligent in holding the juvenile at the Orleans Parish Prison and releasing him without notifying his parents. The Civil District Court of Orleans Parish denied Sheriff Foti's motion for summary judgment. Supervisory writs were filed, and the Fourth Circuit Court of Appeal denied defendants' writ application. We granted defendant's writ of certiorari. We reverse the lower courts and hold that the risk that a juvenile will be killed almost twelve hours after his release from an adult prison is not within the scope of protection of a criminal sheriff's duty to transfer a juvenile detainee held in an adult prison to an appropriate juvenile detention center. We further find that LA. CH.CODE art. 817 is a bail provision and thus does not impose a duty on the sheriff in relation to a juvenile whose charges were dropped.

FACTS AND PROCEDURAL HISTORY
On May 23, 1996, Frank Lazard, III ("Frank") was arrested on the charge of second degree battery. Although he was sixteen years old at the time, the Orleans Parish Criminal Sheriff's Office's ("OPCSO") "motions database," which was maintained by the New Orleans Police Department, indicated he was seventeen years old. Frank confirmed this erroneous age at booking. Based upon this information, Frank was sent to the adult facility and remained there until the District Attorney dismissed his charges on June 6, 1996. At approximately 12:25 p.m., OPCSO released Frank from the adult facility located at 2800 Perdido Street. Frank was killed the next morning at approximately 12:20 a.m. in the 1900 block of Ursuline Street, almost 12 hours after his release.
Frank's parents filed a wrongful death action against Charles Foti, individually and in his capacity as Sheriff of Orleans Parish, the City of New Orleans,[1] and XYZ Insurance Company, the insurers of Sheriff Charles Foti ("Sheriff Foti"). In their Petition for Damages, the plaintiffs alleged that Sheriff Foti arrested their son in May of 1996 and improperly held him at the adult facility instead of transferring him to *659 a juvenile facility despite being provided numerous notices that the child was under the age of seventeen years. The plaintiffs also alleged that Sheriff Foti failed to notify the parents when their son was released from Central Lockup on June 6, 1996.
In response, Sheriff Foti filed a Motion for Summary Judgment arguing that even if OPCSO had been informed that the child was a juvenile, they had no duty to notify the parents prior to his release, and the risk that the child would be killed twelve hours after his release was outside the scope of the alleged duty.
After a hearing, the trial court denied Sheriff Foti's Motion for Summary Judgment without written reasons. Thereafter, Sheriff Foti applied for supervisory writs, which the Fourth Circuit denied. Lazard v. Foti, 02-2172 (La.App. 4 Cir. 11/26/02). Sheriff Foti then filed a writ of certiorari with this court which was granted. Lazard v. Foti, 02-2888 (La.2/14/03), 836 So.2d 119.

DISCUSSION
This court has adopted a duty-risk analysis to determine whether liability exists under the particular facts presented. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1176. Under this analysis, the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Posecai v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/30/99), 752 So.2d 762, 765. Under the duty-risk analysis, all four inquiries must be affirmatively answered for the plaintiff to recover. Id.

DUTY
The first issue presented for our review is whether Sheriff Foti owed a duty to Frank to either transfer him to an appropriate juvenile detention center or, alternatively, to release him to the custody of his parents.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. & Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204. The inquiry is whether the plaintiff has any law, statutory or jurisprudential, to support his claim. Roberts v. Benoit, 605 So.2d 1032, 1043 (La.1991) (affirmed on rehearing).
The plaintiff first argues that Sheriff Foti had a duty to transfer Frank, a minor, to a juvenile facility based on LA. CH.CODE art. 822(C). We agree. Article 822(C) provides that "no child subject to the jurisdiction of the juvenile court shall be held in an adult jail or lockup." When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LA. CIV.CODE ANN. art. 9 (West 2003). Accordingly, it is clear from the plain language of this article that the sheriff had a duty not to keep Frank in an adult facility. It follows from Article 822(C), therefore, that the sheriff should have transferred a minor held in an adult prison to an appropriate juvenile detention center.
Alternatively, the plaintiff argues that LA.CH.CODE art. 817 imposes an additional statutory duty on Sheriff Foti to release a juvenile to the custody and care of his parents, or to notify a detainee's parents upon his release. Article 817 states in pertinent part:

*660 A. As soon as practicable after a child is received by a juvenile detention center or shelter care facility, the court or a probation officer employed and authorized by the court, upon determining it to be appropriate, shall release the child to the care of his parents or other relatives upon their written promise to bring him to court as such times as may be filed by the court. The court may also impose reasonable restrictions upon the child's travel, place of abode, association with other people, or employment during his period of release.
B. If the court finds that these conditions are insufficient to assure the presence of the child at later proceedings, the court may require the posting of bail in accordance with Chapter 6 of this Title.
Under the plain language, Article 817 is a bail provision. Louisiana Code of Criminal Procedure article 311 provides, "Bail is the security given by a person to assure his appearance before the proper court whenever required." Louisiana Code of Criminal Procedure article 326 further provides in pertinent part:
[T]he condition of the bail undertaking in district, juvenile, parish, and city courts shall be that the defendant will appear at all stages of the proceedings to answer the charge before the court in which he will be prosecuted, will submit himself to the orders and process of the court, and will not leave the state without written permission of the court.
A reading of these two provisions establishes that bail provisions apply to courts and probation officers in a pending criminal action.
Because Article 817 is a bail provision, it is inapplicable to the case sub judice. Any duty imposed on the sheriff in relation to Frank under Article 817 is necessarily triggered by the release of a juvenile pursuant to bail. To hold otherwise would indicate that the sheriff had a duty to maintain jurisdiction and authority over an accused juvenile or criminal in absence of pending criminal charges or other court proceeding. In the instant case, the record clearly establishes that the District Attorney dismissed all charges pertaining to the second degree battery. Consequently, LA. CH.CODE art. 817 is inapplicable because Sheriff Foti does not owe a duty pertaining to a bail provision when the charges against the accused are dropped.[2]
We therefore hold that Sheriff Foti has a statutory duty under Article 822(C) to transfer Frank, a minor held in an adult detention center, to an appropriate juvenile correction facility. However, any duty owed under the Article 817 bail provision was not triggered in this case because the District Attorney dismissed the charges.

SCOPE OF DUTY
The next issue that this court must resolve is whether Sheriff Foti's duty to transfer a minor to an appropriate juvenile detention center includes within its scope of protection the risk that juvenile detainees will be killed by the criminal act of a third party almost twelve hours after release.
The essence of a scope of duty inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. Dixie Drive It Yourself System New Orleans, Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962). Where the rule *661 of law upon which a plaintiff relies for imposing a duty is based on a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the legislature. Hill v. Lundin & Assoc., 260 La. 542, 256 So.2d 620, 622 (1972). Since the law never gives absolute protection to any interest, recovery will be allowed only if a rule of law on which plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered. Dixie Drive It Yourself, 137 So.2d at 305 (quoting McDonald, Jesse, Proximate Cause in Louisiana, 16 La. L.Rev. 391).
A risk may be found not within the scope of a duty where the circumstances of that injury to the plaintiff could not reasonably be foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty. Hill, 256 So.2d at 622. As this court stated in Hill v. Lundin,
All rules of conduct, irrespective of whether they are the product of a legislature or part of the fabric of the courtmade law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape. (quoting Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956)). Id. at 622.
The facts in this case are not in dispute. As a result, the court is called upon to resolve only the policy inquiry whether, given the undisputed facts, Sheriff Foti's duty to Frank included protection against Frank's death almost twelve hours after his release from OPCSO. To establish whether Sheriff Foti's duty to transfer a minor held in an adult correctional facility to an appropriate juvenile detention facility encompassed the risk that such juvenile would be killed almost twelve hours after his release, we must look to the purpose of the statutory duties imposed.
The purpose of LA. CH.CODE art. 822(C) is to provide a system of rehabilitation rather than retribution for the juvenile detainee population. Article V, § 19 of the Louisiana Constitution reads in pertinent part as follows: "The determination of guilt or innocence, the detention and custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law." This court has recognized that the purpose of separate procedures for adults and juveniles is to promote "non-criminal" treatment of juveniles. In re C.B., et al., 1997-2783 (La.3/4/98), 708 So.2d 391, 396. As this court stated,
The juvenile justice system, dating back to the early 1900's, was founded as a way to nurture and rehabilitate youthful offenders. The criminal behavior of juveniles was seen as a "symptom" of a breakdown in parental control which required state intervention to save them from a life of criminal behavior, and thus, retributive punishment was deemed inappropriate. The "hallmark" of the juvenile system "was its disposition, individually tailored to address the needs and abilities of the juvenile in question." Indeed, our own state's system was founded upon this premise as is *662 reflected in the stated purpose of our Children's Code, "[In] those instances when [the child] is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him." (Citations omitted).
Id. at 395-396. In accord with In re C.B., Sheriff Foti's duty not to hold Frank in an adult facility is based on the premise that juveniles are entitled to different internal procedures while incarcerated because the focus in a juvenile facility is rehabilitation and not retribution. As defendant argues, this provision and the policies underlying it do not deal with the release of a juvenile detainee, but with the incarceration of juvenile detainees. In contrast with the purpose of Article 822(C), this action arises, not through harm occurring while Frank Lazard was incarcerated in an adult facility, but harm which occurred almost twelve hours after his release. A duty owed by the sheriff does not render him liable for "all consequences spiraling outward until the end of time." Roberts, 605 So.2d at 1052. Based on this distinction, Article 822(C) does not encompass the risk that Frank Lazard III would be killed twelve hours after his release from an adult detention center.
Because we have found that the scope of Sheriff Foti's duty to transfer a juvenile detainee held in an adult facility to an appropriate juvenile detention center does not extend to the risk that he may be killed almost twelve hours after his release from custody, this court need not reach the issues of cause-in-fact, breach, or damages.

CONCLUSION
We therefore hold that the sheriff's statutory duty not to hold a minor in an adult detention center does not encompass the risk that a released juvenile will be killed almost twelve hours after his release by the criminal act of a third party. Moreover, we further hold that the bail provision asserted by the plaintiff does not trigger a duty between the Sheriff Foti and a minor held in an adult facility where the District Attorney dismissed the charges.

DECREE
For the reasons assigned, the judgments of the trial court and the Court of Appeal, Fourth Circuit, are hereby reversed and the case is remanded to the trial court for judgment in accordance with the reasons stated herein.
JOHNSON, J., dissents and assigns reasons.
WEIMER, J., concurs and assigns reasons.
JOHNSON, J. dissents, assigning reasons:
In my view, the lower courts did not err in denying the defendants' motion for summary judgment. LSA-C.C.P. art. 966(C) provides that a motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226. Since the grant of summary judgment denies the litigants the opportunity to present their evidence to the trier of fact, the motion should only be granted when the evidence presented establishes that there is no genuine issue of material fact in dispute. Knowles v. McCright's Pharmacy, Inc., 34-559 (La.App. 2 Cir. 4/4/01), 785 So.2d 101,104.
In the instant case, this Court has moved beyond determining whether there *663 is a genuine issue of material fact and therefore defendant is entitled to judgment as a matter of law, and is instead weighing the evidence and making credibility determinations in order to ascertain whether Sheriff Foti is liable for the death of Frank Lazard. This is an inappropriate exercise of the Court's discretion, as "the weighing of conflicting evidence has no place in summary judgment procedure." Knowles, 785 So.2d at 104. Further, when deciding a motion for summary judgment, "the trial court cannot make credibility determinations" nor "determine or even inquire into the merits of the issues raised." Id. Applying summary judgment in this manner amounts to an abuse of procedure, as it allows a reviewing court to make liability determinations without hearing the evidence in its entirety.

DISCUSSION
In the instant case, the defendants argue that they had no duty under any statute or jurisprudence that required them to inform the parents of the exact date and time of Frank's release. However, based upon the evidence presented, it is clear that Sheriff Foti did have a duty, outlined under LSA-Ch.C. art. 822(C) to transfer Frank, a minor child held in an adult correctional facility, to a proper juvenile detention facility. Frank was arrested on May 23, 1996 on the charge of second degree battery. Since the young man in question was a minor, Sheriff Foti had a duty under LSA-Ch.C. art. 814 to: (1) release him to his parents with their assurances that he would return for any subsequent proceedings; (2) escort him to the appropriate juvenile care facility; (3) notify his parents that he had been taken into custody; (4) submit an affidavit to the juvenile court outlining the probable cause present at the time of arrest; (5) and submit a report to the district attorney containing the identity of the minor, the details surrounding the events that warranted the arrest, and whether the child was released or placed in an appropriate juvenile facility.[1] Since Frank was neither *664 released to his parents nor escorted to the appropriate juvenile care facility, the defendants had a duty to both notify the parents that Frank had been taken into custody and submit an affidavit to the juvenile court outlining the probable cause present at the time of arrest. Article 814(d) states:
"Within forty-eight hours after the child has been taken into custody .... the court shall review the affidavit and if it determines that probable cause exists, the child shall be held for a continued custody hearing pursuant to Article 819. If the court determines that probable cause does not exist, the child shall be released from custody (emphasis added)."
Thus, once the arresting officer's affidavit was submitted to a judge in the juvenile justice system, the Louisiana Children's Code outlines procedures to ensure that a minor is either released or placed in an appropriate juvenile facility. Very specific time constraints exist in the juvenile system to ensure the expeditious handling of juvenile defendants. Thus, LSA-Ch.C. art. 819 outlines:
"If a child is not released to the care of his parents, a hearing shall be held by the court within three days after the child's entry into the juvenile detention center or shelter care facility. If the hearing is not held, the child shall be released unless the hearing is continued at the request of the child (emphasis added)."
In addition, LSA-Ch.C. art. 817 states:
"As soon as practicable after a child is received by a juvenile detention center or shelter care facility, the court or a probation officer employed and authorized by the court, upon determining it to be appropriate, shall release the child to the care of his parents or other relatives upon their written promise to bring him to court at such times as may be fixed by the court (emphasis added)."
Finally, LSA-Ch.C. art. 822(C) governs the placement of a child after the continued custody hearing. While there are several alternatives available for the placement of a youthful offender, it is unequivocally clear that "No child subject to the jurisdiction of the juvenile court shall be held in an adult jail or lockup (emphasis added)." Thus, defendants had a duty to transfer Frank to the proper juvenile facility. Evidence was presented which demonstrates that Mrs. Lazard informed defendants on at least two to three occasions that Frank was a juvenile, and on one occasion, supplied the certified copy of his birth record as proof of his minority. Rather than surrendering custody of Frank to the appropriate juvenile detention facility, Sheriff Foti instead chose to hold Frank in an adult prison for fourteen (14) days, until Frank was ultimately released onto the streets without his parents being notified. During this fourteen day period, defendants were repeatedly informed that Frank was underage, however, they failed to follow the procedures specifically outlined in the Louisiana Children's Code for the detention of minors. This was a breach of duty, as recognized in the majority opinion.
Frank was killed by an unrelated third party twelve hours after he was released *665 without his parents being notified. More than one factor may have been a cause in fact of Frank's death. Where multiple causes are present, we use the "substantial factor" test to determine whether the defendant's conduct played any part in bringing about the plaintiff's harm. Roberts v. Benoit, 605 So.2d 1032 (La.1991). If the defendant's conduct was a "substantial factor," the cause in fact element is established. Roberts, 605 So.2d. at 1042. Stated differently, the question becomes "did the defendant contribute to the plaintiff's harm or is the defendant a cause of the plaintiff's harm?" Id. Similarly, in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 622 (La.1972), this Court held that to the extent the defendant's actions had something to do with the plaintiff's injury, the causal relationship is met. Applying these principles to the instant case, the release of Frank Lazard from an adult prison without notifying his parents was a substantial factor in his subsequent death twelve hours later.
The most critical issue in the instant case turns on the scope of protection or "legal cause" issue, which addresses whether the plaintiff's injury was within the contemplation of the defendant's duty. Under this element, there is no "rule" for determining the scope of duty. Roberts, 605 So.2d at 1044. The scope of duty is a question of policy as to whether the particular risk falls within the scope of the defendant's duty. Id. This element is designed "to protect some persons under some circumstances against some risks." Id. The court must determine on a case by case basis the proper thrust of a rule in its policy aspects. Id. This Court stated in Roberts, when faced with determining scope of duty:
"the scope of protection inquiry becomes significant in `fact-sensitive' cases in which a limitation of the `but for' consequences of the defendant's substandard conduct is warranted. These cases require logic, reasoning and policy decisions be employed to determine whether liability should be imposed under the particular factual circumstances presented." Id.

Such a factual determination is not appropriate for summary judgment proceedings.
Further, pursuant to LSA-C.C.P. art. 966, the plaintiffs are not required to prove, as if they were at trial, the allegedly missing elements of their claims. They are only required to present sufficient evidence to show that there is a genuine issue of material fact to warrant a reasonable juror to find the existence of the plaintiff's cause of action. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597,143 L.Ed.2d 966 (1999).
After a careful review of this matter, I conclude that the lower courts did not err in denying the defendant's motion for summary judgment. I admit that the ease of association and causal connection between Sheriff Foti's failure to transfer Frank to the proper juvenile facility and/or to his parents and his death by shooting over twelve hours later is, at best, attenuated. Nevertheless, under a strict duty/risk analysis, this Court should not conclude on summary judgment that the duty to transfer a juvenile offender to the appropriate juvenile facility or to at least notify his parents of his release does not encompass the risk that the release of an unsupervised minor could result in harm. While Sheriff Foti speculates that such harm would have occurred even if Frank had been released to his parents, such a question of fact is more appropriately determined by the judge or jury after a trial on the merits. Thus, I would affirm the lower court's ruling denying the defendants' motion for summary judgment.
*666 WEIMER, J., concurring.
I agree with the majority's conclusion. As noted in Roberts v. Benoit, 605 So.2d 1032 (La.1991), when considering limitation of liability issues, whether phrased in terms of scope of duty or legal cause, it can be useful to consider whether "too much else has intervened-time, space, people, and bizarreness." Roberts, 605 So.2d at 1058 (quoting David W. Robertson, Reason Versus Rule in Louisiana Tort Law: dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973)). In this instance, the undisputed facts reveal that 12 hours had elapsed between Frank's release and his demise (time); the slaying occurred some distance from both the parish prison and his residence (space); the conduct of Frank's unknown assailant played a substantially more direct role in his demise (people); and the slaying was a completely random event (bizarreness).
Under these circumstances, liability should not be imposed upon the Sheriff, and the result reached by the majority is correct.
NOTES
[1] The City of New Orleans filed an Exception of No Cause of Action, which was granted by the trial court thereby dismissing without prejudice the plaintiffs' claims against the City and reserving the right to rejoin the City as a party defendant should discovery require it.
[2] Discussion of plaintiff's argument regarding the scope of the sheriff's duty under LA. CH. CODE art. 817 is pretermitted because we find that the sheriff does not owe Frank a duty under bail provisions when the charges are dropped.
[1] LSA-Ch.C. art. 814 states:

A. A child may be taken into custody without a court order or warrant by a peace officer or probation officer if the officer has probable cause to believe that the child has committed a delinquent act.
B. If a child is taken into custody without a court order or warrant, the officer shall have the responsibility to either:
(1) Counsel and release the child to the care of his parents upon their written promise to bring the child to court at such time as may be fixed by the court.
(2) Promptly escort the child to the appropriate facility in accordance with Article 815.
C. If the officer does not release the child to the care of his parents, the officer shall promptly notify the child's parents that he has been taken into custody.
D. The officer shall immediately execute a written statement of facts, sworn to before an officer authorized by law to administer oaths, supporting the existence of probable cause to believe either that the child committed a delinquent act or that the child has violated the terms of his probation or otherwise has violated the terms of his release. This affidavit shall be submitted to the juvenile court. Within forty-eight hours after the child has been taken into custody, including legal holidays within the time computation, the court shall review the affidavit and if it determines that probable cause exists, the child shall be held for a continued custody hearing pursuant to Article 819. If the court determines that probable cause does not exist, the child shall be released from custody.
E. The officer shall submit a report to the district attorney or an officer designated by the court to receive such reports. The report shall include:
(1) The name, address, date of birth, sex, and race of the child.
(2) The name and address of the parents, or spouse, if any, of the child.
(3) A plain and concise statement of the facts and circumstances of the officer's taking the child into custody.
(4) A plain and concise statement of facts and circumstances showing probable cause that the child committed a delinquent act.
(5) A statement indicating whether the child was released, or escorted to a juvenile detention center, or placed in a shelter care facility.
F. If the child is released pursuant to Paragraph B or D of this Article, the report shall be submitted by the officer within seven days from the child's release. If the child is not so released, the report shall be submitted within twenty-four hours of the child being taken into custody.