19.GAIDRY, J.
This appeal is taken by the plaintiff-appellant, Daniel Safford, from a judgment in his favor, awarding him damages against the defendant-appellee, the Bayou Lafourche Fresh Water District. Mr. Saf-ford seeks additional damages denied by the trial court. The District has answered the appeal, seeking reversal of the judgment against it or alternate relief reducing the damages awarded. For the reasons expressed, we reverse.
FACTUAL BACKGROUND AND PRIOR PROCEEDINGS
Bayou Lafourche is a tributary of the Mississippi River, and flows through Ascension, Assumption, and Lafourche Parishes. It was originally a natural free-flowing, navigable bayou, but beginning in 1903, levees, locks, and other flood control structures were constructed that artificially reduced the volume of water entering the bayou from the Mississippi River.
The Bayou Lafourche Fresh Water District (the District), a political corporation, was created by Acts 1950, No. 113 [1] for the *? purpose of “furnishing fresh water from the Mississippi River to the incorporated villages, towns and cities along Bayou La-fourche and within or adjacent to [the District’s] boundaries.” The act also charges the District with the duty “to provide and maintain in Bayou Lafourche a source of fresh water supply out of the Mississippi River from Donaldsonville to the Gulf of Mexico.” (Our emphasis.) By Acts 1952, No. 192, the District was authorized to construct, maintain, and operate a pumping facility at the head of Bayou Lafourche in Donaldsonville. The District operates the Donaldsonville pumping facility, constructed in 1955, and other pumping stations along the bayou’s 110-mile course, providing water for the consumption of approximately 800,000 residents. In addition to the Donaldsonville pumping | afacility, there are three other obstructions to the flow of the bayou before it reaches the Gulf of Mexico.
Mr. Safford owns immovable property situated on Bayou Lafourche within Don-aldsonville’s corporate limits. After purchasing the property in 1983, he constructed a bulkhead, a dog pen, and a boat shed on riparian land near the bayou. According to Mr. Safford, after he constructed those buildings, they began to experience flooding around December 1994 from the bayou’s continuously rising level. He further claimed that the works he constructed were damaged by the bayou’s elevated water level in October 1996 and in September 1998. As a result of the elevated water level, he claimed to have sustained damages to his bulkhead, including “erosion,” the loss of a septic tank for his dog pen, lost profits from personal businesses conducted on the property, and loss or damage to other items of movable property.
In its judgment, the trial court incorporated its findings of fact. It awarded Mr. Safford the sum of $8,270.00, representing the amount of the initial estimate of repair for his bulkhead. The trial court denied any further relief, finding that Mr. Safford failed to prove that any additional damages claimed were caused by the District. From that judgment, Mr. Safford instituted the present appeal, which has been answered by the District.
ASSIGNMENTS OF ERROR
Mr. Safford assigns as error the trial court’s failure to award him any damages other than those relating to the initial damage to his bulkhead.
In its answer to Mr. Safford’s appeal, the District assigns as error the trial court’s finding of negligence on its part, challenging the existence of a duty on its part, the finding of a breach, and the finding of causation. The District initially contended that it is also entitled to statutory immunity for its | ¿discretionary acts under La. R.S. 9:2798.1. By brief, however, it now abandons its assignment of error relating to statutory immunity.[2] Accordingly, we must decide the issue of the District’s liability by undertaking the duty-risk analysis required by our delictual law. Finally, *1130 the District assigns as error the trial court’s finding that Mr. Safford could assert a cause of action for.works constructed on state-owned land, and the trial court’s failure to find contributory negligence on the part of Mr. Safford.
ANALYSIS
Negligence is that conduct falling below the standard of care established by law for the protection of others against an unreasonable risk of harm. It is the breach of a duty owed to another to protect that person from the particular harm that ensued. Deleo v. Bayou Lafourche Fresh Water District, 02-0513 p. 6 (La. App. 1st Cir.2/14/03), 846 So.2d 17, 21, writ denied, 03-0695 (La.5/16/03), 843 So.2d 1132.
In the cited case, numerous owners and residents of land along Bayou Lafourche sued the District for its alleged negligence in shutting off the pumps of the Donald-sonville pumping facility for over a week in response to a benzene spill in the Mississippi River. As a result of the fluctuating water levels in the bayou, the plaintiffs claimed damages to their properties, including damages to bulkheads and cave-ins of the banks. Although we agreed with the District that the plaintiffs failed to prove that they, rather than the state, owned the subject properties, we chose to resolve the case on pother grounds. We also pretermitted consideration of the District’s claim of immunity under La. R.S. 9:2798.1, and instead expeditiously resolved the controversy by addressing the issue of negligence. In doing so, we did not directly address the existence and nature of any duty owed by the district, but instead premised our decision on the reasonableness of the District’s emergency handling of a "unique situation” involving a potential health hazard. Here, however, we will address the issue of the duty, if any, owed by the District to Mr. Safford under the facts presented.
Under the duty-risk analysis, the' plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Lazard v. Foti, 02-2888 p. 3 (La.10/21/03), 859 So.2d 656, 659. A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty founded upon statutory or jurisprudential law. Lazard, 02-2888 at pp. 3-4, 859 So.2d at 659.
In reviewing the question of whether the District’s actions constituted negligence, we conclude it owed no duty toward Mr. Safford with regard to the property at issue. The police power of the state encompasses the exercise of its sovereign right to promote the general welfare of society, including the inherent right to protect citizens from damage by flood. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 289 (La.1986). The legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions, or political corporations. Id. The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of | ¿flood control to the District.[3] In Board of Com *1131 missioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District, 340 So.2d 600, 602 (La.App. 1st Cir.1976), this court confirmed the limited function and duties of the District by observing that “the purpose of [Acts 1950, No. 113] was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche.”
The undisputed evidence at trial demonstrates that Mr. Safford constructed his bulkhead, dog pen, and boat shed on land within the ordinary low stage of Bayou Lafourche, that is, below the bank that he owned.[4] Mr. David Cloud, a registered surveyor, was accepted by the trial court as an expert in the field of land surveying. This field is defined by statute as including “the measuring of areas, land surfaces, streams, bodies of water, and swamps for correct determination and description, for the establishment, reestablishment, ascertainment, or description of land boundaries .La. R.S. 37:682 (our emphasis). Mr. Cloud testified that he surveyed the property at issue and undertook to establish the historic ordinary or “mean” high and low water stages of the bayou on the property, describing in detail the methodology required, given Bayou Lafourche’s unique features. The mean high water mark shown in Mr. Cloud’s survey in fact corresponded well with the “top bank” boundary set out in a 1986 survey plat of the property performed for Mr. Safford by another surveyor. Mr. Cloud 17determined that Mr. Safford’s bulkhead, boat shed, and dog pen were all situated within the ordinary or “mean” low water stage, and thus were situated on state-owned land. This testimony and supporting evidence were uncontradicted.
As Mr. Cloud observed, the land upon which Mr. Safford’s works were constructed belongs to the state, as it forms part of the bottom of a natural navigable body of water. La. C.C. arts. 450, 456; La. R.S. 9:1101. Additionally, as Mr. Safford’s property is on the shore of a navigable bayou, it is subject to any predial servitude imposed for the public utility. La. C.C. art. 665. As the District’s full name connotes, its mission is to ensure the provision of fresh water for the benefit of residents within its boundaries. The evidence shows that its present mission does not relate solely to fresh water intended for human or livestock consumption, but also that needed for industrial, agricultural, and environmental purposes.[5] Clearly, Mr. Saf-ford’s individual interests in his property constructed on state land, even with the tacit or express consent of the state, must yield to the public’s common interest. In short, we conclude that the District did not owe Mr. Safford any duty to maintain a certain water level within the boundaries of the water bottom owned by the state, who delegated to the District its duties pertaining to the supply of fresh water.
Further, being charged with knowledge of the law, Mr. Safford must be deemed to have assumed the foreseeable risk that any works constructed on state *1132 land, within the bayou’s ordinary low water stage, might become | Ssubmerged through natural mechanisms or governmental intervention. Finally, the evidence put forth by Mr. Safford simply failed to demonstrate that the District’s actions caused the flooding, or that the District breached any duty or acted negligently even if it did.
The essence of Mr. Safford’s complaint against the District is that it failed to respond to his complaints about flooding on his property (or what he perceived to be his property) by shutting off its Don-aldsonville pumps. Both his argument in that regard and the District’s response to it take for granted the fact that the District would evaluate the water level in the bayou in light of the need for fresh water at that time, weighed against the possible threat of flooding in some areas by pumping operations, and respond in a considered fashion. The overwhelming weight of the evidence presented at trial demonstrated that the administrative decisions relating to pump volume were of necessity discretionary in nature. Both the water volume and water level of Bayou La-fourche are dependent upon a number of disparate factors, resulting in a dynamic rather than a static situation in terms of both supply and demand of fresh water. In effect, Mr. Safford complains that the District failed to exercise its discretion for his benefit by shutting off or reducing the volume of water being pumped into the bayou. But its discretionary decisions to maintain the water levels of which he complains were clearly founded upon the public purpose and policy of its inherent mission, and the preponderance of the evidence fails to show that those actions were unreasonable.
The evidence plainly showed that the volume of water pumped into the bayou by the District in fact decreased over the years Mr. Safford claimed it increased, and that the water level in the bayou was subject to a number of factors not directly under the!(control of the District, such as | ¿rainfall, siltation of sediment, and the growth of water hydrilla and other aquatic vegetation. Additionally, the method by which Mr. Safford assessed the alleged increased water volume in the bayou was actually only a measure of the water depth to the bottom near his property, a measurement affected by increased siltation deposited on the bottom, rather than by only total water volume.
The record before us fails to establish a specific duty, any breach of such a duty, or that any such breach was either a cause-in-fact or legal cause of the damages claimed. In summary, Mr. Safford has not proven that the District negligently breached any duty to him in the fulfillment of its mission imposed by the legislature, and it is not liable to him for damages.
DECREE
The judgment of the trial court in favor of the plaintiff-appellant, Daniel Safford, and against the defendant-appellee-appel-lant, the Bayou Lafourche Freshwater District, is reversed. All costs of this appeal are assessed to the plaintiff-appellant, Daniel Safford.
REVERSED.
FITZSIMMONS, J., concurs in the result and assigns reasons.

. Acts 1950, No. 113 is a local or special act of the legislature, not forming part of the published Louisiana Revised Statutes.

. Generally, any immunity claim must properly be addressed first, as a finding that the defendant is immune would obviate a detailed duty-risk analysis. See Hardy v. Bowie, 98-2821 p. 11 (La.9/8/99), 744 So.2d 606, 613; Mayhom v. McKinney, 34,789 p. 6 (La.App. 2nd Cir.6/20/01), 793 So.2d 225, 229. The trial court ruled that the District was not entitled to immunity under La. R.S. 9:2798.1 because its employees’ decisions relating to the bayou’s water level were not "policy based,” which the court interpreted as meaning that they were not based upon any policy regarding water level established by the District for its employees to follow. We might appropriately question the validity of such interpretation, since the record of this matter suggests that the District’s claim of immunity probably had merit. But as that issue has been removed from our consideration, we may only decide this matter based upon the remaining issues presented.

. Cf. Saden v. Kirby, 94-0854 (La.9/5/95), 660 So.2d 423. The duty of flood control in the geographic area served by the Bayou La-fourche Fresh Water District was delegated by the legislature to the Atchafalaya Basin Levee District and the Lafourche Basin Levee District. La. R.S. 38:291(A), (F); La. R.S. 38:306. Until 1952, these levee districts had the responsibility of maintaining the supply of fresh water in Bayou Lafourche. See Acts 1952, No. 191.

. Louisiana Civil Code article 456 provides that, except where levees exist, "[t]he bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water.”

. As part of its mission to furnish fresh water, the District is expressly empowered to "protect from pollution the water so furnished.” Acts 1950, No. 192. The trial testimony established that salinity is considered a pollutant to potable water under federal Environmental Protection Agency regulations. This court further takes judicial notice of the urgent efforts to mitigate the ongoing loss of Louisiana’s coast, caused in part by saltwater intrusion, one of the factors weighed by the District in determining the amount of water pumped into Bayou Lafourche.