MARC E. JOHNSON, Judge.
 

 12Plaintiff/appellant, Lorraine Zenobia Williams, on behalf of interdict Floyd Williams, appeals the trial court’s judgment in favor of defendants/appellees, Sheriff Wayne Jones, St. John the Baptist Sheriffs Office, St. John the Baptist Correctional Center, Warden Philip Hebert, and St. Paul Fire and Marine Insurance Company, dismissing her tort suit. For reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff filed suit against the above-named defendants alleging her son, Floyd Williams, was injured when he fell from the top bunk of his bed at the St. John the Baptist Correctional Center (SJCC) while he was in the custody of the St. John the Baptist Sheriffs Office. Plaintiff asserted that as a result of his fall, Mr. Williams suffered a serious spinal cord injury and sustained brain damage. After a bench trial, the trial court concluded the plaintiff failed to meet her burden of |8proving that defendants were liable for the incident under either negligence or strict liability.
 

 At trial, it was established that Floyd Williams was arrested on October 1, 2006 for littering and trespassing and was booked into SJCC. He spent two days in a holding cell before being processed and transferred to the general population of the SJCC. Prior to being transferred to the general population, a medical intake was conducted and no unusual behavior or
 
 *929
 
 significant medical problem relating to Mr. Williams was noted. Accordingly, Mr. Williams was placed in general population and assigned to a top bunk bed, which was not equipped with a guardrail. Approximately two weeks later, on October 17, 2006, Mr. Williams fell from the top bunk onto the concrete floor and suffered a serious cervical spinal cord injury resulting in quadriplegia.
 

 The parties entered into several stipulations at trial. They stipulated that the bunk bed at issue was purchased under the authority of Sheriff Wayne Jones by his employees, who chose the style, make and model of the bed. They also stipulated Sheriff Jones had ownership, custody and control of the bed at issue.
 

 In concluding the plaintiff failed to carry her burden of proving liability under the theory of negligence, the trial court found the defendants did not breach their basic duty to protect Mr. Williams from harm. The trial court noted that prison authorities have a duty to exercise reasonable care to protect inmates from harm, but stated the duty only applies to prevent harm the prison authorities have reasonable cause to anticipate. The trial court reasoned the basic duty of care did not include the prevention of a fall from a prison bed if the prison officials were not aware of a particular inmate’s tendency to fall. The trial court determined there was no evidence suggesting that either the Sheriff or any of his ranking officers or deputies were aware of any problems with respect to Mr. Williams that would |4provide them with reasonable cause to anticipate that he would fall from his top bunk. As such, the trial court concluded the risk of falling was beyond the scope of the jailer’s basic duty to protect an inmate from harm.
 

 Additionally, the trial court concluded the bunk bed was not unreasonably dangerous for purposes of strict liability because the potential for danger was obvious and a person exercising reasonable care would not sustain similar injuries. The trial court also found defendants did not have actual or constructive notice of any vice or defect in the bed. The trial court noted there were no significant prior occurrences of an incident that suggested the need for a guardrail on the top bunk and there were no regulatory guidelines requiring a guardrail or warning on prison bunk beds that would give prison officials notice of an unreasonably dangerous condition.
 

 ISSUES
 

 The plaintiff raises four issues on appeal, two relating to negligence and two relating to strict liability. First, she claims the trial court erred in finding the prison authorities did not owe a duty to protect Mr. Williams from the foreseeable harm associated with the bunk bed. Second, she contends the trial court improperly applied the duty-risk analysis by focusing on the victim rather than the bunk bed that caused the injury. Third, the plaintiff maintains the trial court erred in finding the bunk bed did not present an unreasonable risk of harm. And, fourth, she asserts the trial court erred in concluding the defendants did not have notice of the defect in the bunk bed.
 

 LAW AND ANALYSIS
 

 Plaintiffs claims fall under either a theory of negligence pursuant to La.C.C. art. 2315 or strict liability pursuant to La.C.C. art. 2317. The trial court 15specifically addressed both theories of liability and found no liability under either theory.
 

 Negligence
 

 To determine whether liability exists under a negligence theory the courts apply a duty-risk analysis. Under this analysis, the plaintiff must prove (1) the
 
 *930
 
 conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to the plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached,
 
 Lazard v. Foti,
 
 02-2888, p. 3 (La.10/21/03), 859 So.2d 656, 659. A negative answer to any of the elements of the duty/risk analysis requires a no-liability determination.
 
 Id.
 

 The question of whether a defendant owes a duty to the plaintiff is a question of law.
 
 Lazard v. Foti, supra.
 
 The Louisiana Supreme Court has stated that penal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it.
 
 State ex rel. Jackson v. Phelps,
 
 95-2294, p. 3 (La.4/8/96), 672 So.2d 665, 667. Thus, the inquiry is whether the prison authorities at SJCC had reasonable cause to anticipate harm to Mr. Williams; in other words, whether the duty to protect inmates from harm includes within its scope of protection the risk that inmates will fall from the top bunk of their beds.
 

 A risk is not within the scope of a duty where the circumstances of that injury to the plaintiff could not reasonably be foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty,
 
 Lazard v. Foti,
 
 02-2888 at 6, 859 So.2d at 661. The supreme court has explained:
 

 All rules of conduct, irrespective of whether they are ... part of the fabric of the court-made law of negligence, exist for a purpose. They are designed to protect some persons under some circumstances |fiagainst some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises.
 

 Lazard v. Foti,
 
 02-2888 at 6, 859 So.2d at 661, quoting
 
 Hill v. Lundin & Associates, Inc.,
 
 260 La. 542, 256 So.2d 620, 622 (1972).
 

 The present record shows that the prison authorities at SJCC had no reasonable cause to anticipate Mr. Williams would fall from his bed and harm himself. Mr. Williams had slept on the top bunk without incident for two weeks prior to the incident. Additionally, a medical intake evaluation did not reveal any medical conditions or other problems Mr. Williams had that would indicate Mr. Williams was unable to safely sleep on a top bunk. Furthermore, the record shows Mr. Williams had been jailed numerous times in the past and had there was no indication he had fallen out of bed during any of his prior incarcerations. Although there was evidence that one other inmate had previously fallen out of a bed at the SJCC, the inmate had fallen from a lower bunk and there was no evidence regarding the inmate’s medical history or his state or actions at the time he fell. Thus, we find no error in the trial court’s conclusion that the risk an inmate, who had no known medical condition or problems, would fall from the top bunk of his bed was not within the scope of protection afforded by prison authorities’ duty to use reasonable care to protect an inmate from harm.
 

 Strict Liability
 

 In determining defendants were not liable under strict liability, the trial court found that the top bunk of the bed was not unreasonably dangerous and that defendants had no notice of any alleged defect.
 

 La.C.C. art. 2317.1 provides in pertinent part:
 

 
 *931
 
 |7The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
 

 This article effectively turns strict liability into negligence claims.
 
 Butkiewicz v. Evans,
 
 06-236, p. 5 (La.App. 5 Cir. 9/26/06), 943 So.2d 509, 512.
 

 To prevail on a claim against a public entity under La.C.C. art. 2317.1, a plaintiff must establish: (1) the entity’s custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity’s actual or constructive notice of the defect; and (4) causation.
 
 Id.,
 
 06-236 at 5, 943 So.2d at 513.
 

 In the present case, the parties stipulated that Sheriff Jones owned the bunk bed at issue. Thus, the issue is whether the lack of a guardrail on the top bunk created an unreasonable risk of harm.
 

 There is no fixed rule for determining whether the thing at issue presents an unreasonable risk of harm. In determining whether a defect creates an unreasonable risk of harm, the courts use a risk-utility balancing test in which the gravity and risk of harm is balanced against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair.
 
 Butkiewicz v. Evans,
 
 06-236 at 6, 943 So.2d at 513. In other words, the trier of fact must decide whether the social value and utility of the hazard outweigh its potential harm to others.
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365.
 

 The Louisiana Supreme Court has explained,
 

 The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically... .The concept, |swhich requires a balancing of the risk and utility of the condition, is not a simple rule of law which can be applied-mechanically to the facts of the case.... Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. [Citations omitted.]
 

 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174 at 4, 708 So.2d at 364.
 

 The manifest error standard of review applies to the trial court’s finding of whether a defect creates an unreasonable risk of harm.
 
 Trice v. Isaac,
 
 99-839, p. 6 (La.App. 5 Cir. 2/16/00), 759 So.2d 843, 846,
 
 writ denied,
 
 00-1113 (La.6/2/00), 763 So.2d 600.
 

 The fact an accident occurred because of a defect does not elevate the condition of the thing to that of an unreasonably dangerous defect. The defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.
 
 Lasyone v. Kansas City Southern R.R.,
 
 00-2628, pp. 14-15 (La.4/3/01), 786 So.2d 682, 694.
 

 In the present case, plaintiff presented the testimony of George Widas, who was qualified as a safety expert and engineer. Mr. Widas testified that the bunk bed at issue did not meet the standard safety criteria because it did not contain a guardrail or any warnings of the fall hazard it presented. He explained his opinion was based on various references including the Consumer Product Safety Commission (CPSC), which states any
 
 *932
 
 bunk bed over 30 inches high presents a fall hazard of significant risk. On cross-examination, Mr. Widas admitted the safety standards set forth by the CPSC specifically excludes prisons. Mr. Widas further admitted that he knew of no national, state, local, or city standard for the manufacturing of prison bunk beds.
 

 The evidence showed the bunk bed at issue was manufactured by Prison Enterprises, who was dismissed as a party-defendant before trial. Todd Labatut, |flthe deputy director of Prison Enterprises, testified that the standard bunk bed Prison Enterprises manufactured did not come with a top guardrail unless the customer specifically requested it. He stated that of the 8,500 bunk beds Prison Enterprises sold in Louisiana, only 276 had top rails on them. Mr. Labatut also stated he knew of no standards or requirements that mandated Prison Enterprises to build bunk beds with a top guardrail. He further testified he was unaware of any person who had been injured from falling from a bunk bed.
 

 Lieutenant James Oubre, Chief of Security for the St. John Parish Sheriffs Office (SJSO), testified that SJCC has had the same type of beds for the 25 years he has been employed by SJSO. He stated he was aware of only one person, other than Mr. Williams, who had ever fallen out of a bed at SJCC.
 

 While this accident was tragic, we cannot say the trial court erred in finding the lack of a guardrail on the top bunk did not constitute an unreasonably dangerous condition. Based on the evidence, a person would not reasonably expect the lack of a guardrail on the top bunk bed at a prison to cause injury under ordinary circumstances. Over the years, many prisoners have slept on the bunk beds on a daily basis, yet Mr. Williams was the only one who has fallen from the top bunk and suffered a serious injury. The evidence does not show that the probability and magnitude of the risk of an inmate falling out of the top bunk outweighs the utility of a standard bunk bed in prison.
 

 Accordingly, we find no error in the trial court’s judgment finding defendants were not liable under negligence or strict liability to plaintiff for Mr. Williams’ injury.
 

 AFFIRMED.